CORONADO OIL & GAS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10503. Promulgated January 14, 1929.

*T. P. Gore, Esq., Hubert L. Bolen, Esq., D. A. Richardson, Esq.,* and *S. W. Hayes, Esq.,* for the petitioner.

*Dwight H. Green, Esq.,* and *Maxwell E. McDowell, Esq.,* for the respondent.

1216

1218

1220

**OPINION.**

TRUSSELL: The taxes here involved are for the calendar years 1917, 1918, and 1919, and the deficiencies appealed from have been determined under the Revenue Acts of 1916, 1917, and 1918. By section 10 of the first mentioned Act, which is carried into the two subsequent Acts, a tax is imposed upon the net income of " every corporation, joint stock company or association, or insurance company, organized in the United States, no matter how created or organized ", with the exception of corporations operated for certain

specified purposes, which need not be here detailed, as it is not claimed that petitioner falls within one of these excepted classes.

It is not questioned that petitioner is a private domestic corporation, created and operated for the personal and private gain of its individual stockholders, and that the property from which the income in question was derived, consisting of a lease of oil lands and physical assets represented by the operating equipment on those lands, belonged to it and represented the personal investment of its stockholders. It will thus be seen that petitioner is subject to tax upon its income unless entitled to some exemption, and that such exemption, if it exists, is not granted by the taxing statute.

Petitioner claims that its income during the taxable years in question is exempt from Federal taxation for the reason that it was all derived from the sale of oil and gas produced from public school lands leased from the State of Oklahoma; that by its lease of such lands from the State it became the instrumentality through which the latter derived part of its public school fund and that to tax its income is to burden the State in the performance of its governmental function of maintaining public schools. In approaching the question we must bear in mind that exemption from tax is never presumed, but, on the other hand, the presumption is in favor of the taxing power and the burden is upon the claimant to establish clearly and beyond doubt its right to exemption. It is well recognized that " taxation is the rule and exemption the exception ". Cooley on Taxation, vol. 1, p. 356.

The mere fact that the property of the State of Oklahoma is exempt from Federal taxation does not grant such immunity to a lessee of that property, as it is well recognized that the right to use property is distinct from the fee and that a tax upon the interest of the lessee is not a tax upon that of the lessor. In *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232, the court held the lessee of tax exempt Indian lands liable to Federal income tax upon the ground that the exemption of the lessor by Congress could not be presumed to extend to those doing business with him.

In *Jetton* v. *University of the South*, 208 U. S. 489, there was involved the right of the State to lay a tax upon the interest of a lessee in property belonging to a lessor who was specifically exempted from taxation by statute, it being claimed that the tax violated the legislative contract of the statute as it lessened to that extent the value of the leasehold interest to the lessor and thus indirectly burdened him with the tax. In denying exemption to taxation to the lessee the court said:

As long as different interests may exist in the same land, we think it plain that an exemption granted to the owner of the land in fee does not extend to an exemption from taxation of an interest in the same land, granted by an owner

of the fee to another person as a lessee for a term of years. The two interests are totally distinct, and the exemption of the one from taxation plainly does not thereby exempt the other.

In *Elder* v. *Wood*, 208 U. S. 226, the right of the State of Colorado to tax a mining claim belonging to an individual was questioned, the fee in the land upon which the claim was located being in the United States. The court in sustaining the right to tax held that the property taxed was "the right of possession of the land for mining purposes," which belonged to the individual, saying:

Such an interest from early times has been held to be property, distinct from the land itself, vendible, inheritable and taxable.

That the State may not impose a tax which interferes with the free exercise by the Federal Government of the powers granted it by the Constitution, and that a privilege or occupation tax upon an instrumentality which represents in its creation or use a direct exercise of such powers, is an interference therewith, can not be questioned.

In *McCullough* v. *Maryland*, 4 Wheat. 316, the right of the State was denied to impose a privilege or occupation tax upon the Bank of the United States, a corporation created by Congress, upon the ground that Congress possessed the power to create such a corporation and the grant of such power by the Constitution implied such immunity as necessary to maintain the free exercise thereof and accordingly the taxation by the State of the thing created, the corporate body, was an interference with the exercise of such power. Following this decision the courts in many decisions have affirmed and applied this rule. *Osborn* v. *Bank*, 9 Wheat. 738; *Weston* v. *City Council of Charleston*, 2 Pet. 449; *Dobbins* v. *Commissioners of Erie County*, 16 Pet. 436; *Van Allen* v. *Assessors*, 3 Wall. 573; *Bradley* v. *People*, 4 Wall. 459; *National Bank* v. *Commonwealth*, 9 Wall. 353; *Van Brocklin* v. *State of Tennessee*, 117 U. S. 151; *Northern Pacific R. R. Co.* v. *Smith*, 171 U. S. 261; *Grether* v. *Wright*, 75 Fed. 742; *Home Savings Bank* v. *Des Moines*, 205 U. S. 503; *Farmers' Bank* v. *Minnesota*, 232 U. S. 516; *Johnson* v. *Maryland*, 254 U. S. 51.

The converse of this rule, a corresponding limitation upon the power of the Federal Government to interfere with the exercise by the States of the powers reserved to them, is equally well established.

In *Collector* v. *Day*, 11 Wall. 113, it was held that the Federal Government had no right to impose a tax upon the salary of an executive officer of a State, the court saying:

And if the means and instrumentalities employed by that government to carry into operation the powers granted to it are, necessarily, and, for the sake of self-preservation, exempt from taxation by the States, why are not those of the States depending upon their reserved powers, for like reasons, equally exempt from Federal taxation? Their unimpaired existence in the one case is as essential as in the other. It is admitted that there is no express provision in the Constitution that prohibits the general government from

taxing the means and instrumentalities of the States, nor is there any prohibiting the States from taxing the means and instrumentalities of that government. In both cases the exemption rests upon necessary implication, and is upheld by the great law of self-preservation; as any government, whose means employed in conducting its operations, if subject to the control of another and distinct government, can exist only at the mercy of that government.

In *Pollock* v. *Farmers Loan & Trust Co.*, 157 U. S. 584, the court said:

As the States cannot tax the powers, the operations, or the property of the United States, nor the means which they employ to carry their powers into execution, so it has been held that the United States have no power under the Constitution to tax either the instrumentalities or the property of a State.

In *Ambrosini* v. *United States*, 187 U. S. 1, the power of the Federal Government was denied to levy a stamp tax on bonds given a State under a requirement of its law. The court said:

The general principle is that as the means and instrumentalities employed by the general government to carry into operation the powers granted to it are exempt from taxation by the States, so are those of the States exempt from taxation by the general government.

The application of these rules has, however, been limited to those cases where the Federal Government or the State in its employment and use of an instrumentality was performing some definite governmental function peculiar to its sovereign character. It is held not to apply to the case where a private individual or corporation merely deals with the Federal Government, or with the State for private gain under a contract executed by the latter as an incident of the exercise of one of its governmental powers.

In *Baltimore Shipbuilding Co.* v. *Baltimore*, 195 U. S. 375, the Supreme Court, speaking through Justice Holmes, said:

But, furthermore, it seems to us extravagant to say that an independent private corporation for gain, created by the State, is exempt from State taxation, either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time.

In *Fidelity & Deposit Co.* v. *Pennsylvania*, 240 U. S. 319, the corporation claimed immunity from taxation by the State on premiums collected by it on bonds executed under authority of an act of Congress allowing it to be accepted as surety on bonds required by laws of the United States, charging that its transactions with the Federal Government thereunder constituted it a governmental instrumentality. In holding that it was subject to taxation by the State on such business the court said:

But mere contracts between private corporations and the United States do not necessarily render the former essential governmental agencies and confer freedom from taxation.

In *Osborn* v. *The Bank*, *supra*, where it was held that the Bank of the United States was not a private corporation but a public one, created for national purposes and accordingly not subject to taxation by the State, Chief Justice Marshall, for the court, conceded that had it been a private corporation, with private trade and profit its purpose, it would be subject to State taxation. The learned Chief Justice said that had this been the case—

This mere private corporation engaged in its own business, with its own views, would certainly be subject to the taxing power of the State, as any individual would be; and the casual circumstance of its being employed by the government in the transaction of its fiscal affairs would no more exempt its private business from the operation of that power than it would the private business of any individual employed in the same manner.

In *Flint* v. *Stone Tracy Co.*, 220 U. S. 108, the court, after citing the authorities holding that the State can not tax agencies or corporations which are created for the purpose of carrying out governmental functions of the United States, said:

An examination of these cases will show that in each case where the tax was held invalid the decision rested upon the proposition that the corporation was created to carry into effect powers conferred upon the Federal Government in its sovereign capacity, and the attempted taxation was an interference with the effectual exercise of such powers.

In this case the court in its discussion of the right of the Federal Government to tax instrumentalities of the State said:

The true distinction is between the attempted taxation of those operations of the States essential to the execution of its Governmental functions, and which the State can only do itself, and those activities which are of a private character. The former, the United States may not interfere with by taxing the agencies of the State in carrying out its purposes; the latter, although regulated by the State and exercising delegated authority, such as the right of eminent domain, are not removed from the field of legitimate Federal taxation.

And so in *Grover* v. *Standard Dredging Co.*, 224 U. S. 362, it was held that the property of a contractor employed by the United States was not exempt from taxation even though exclusively used for the carrying out of the contract.

The Supreme Court has also drawn a definite distinction between those cases in which the State was exercising a purely governmental power and one merely incident, and equivalent to the carrying on of a private business, although the agency employed was one representing the interest of the State alone. In *South Carolina* v. *United States*, 199 U. S. 437, there was presented the right of the Federal Government to lay an excise tax upon the agents employed by the State of South Carolina to operate the State liquor dispensary under the provisions of a statute of that State under which it took over the exclusive sale of liquor, this statute having been held constitutional by the Supreme Court as a proper

exercise of its sovereign police power. In this case the business carried on by the agents was wholly an activity of the State itself, all of the net profits were revenue to the State and any burden by way of tax on the business was directly reflected in a lessening of the revenue it ultimately received. The court, after reviewing the authorities, in sustaining the right of the Federal Government to tax this instrumentality of the State said:

> So here the charge is not upon the property of the State, but upon the means by which that property is acquired, and before it is acquired.
>
> It is also worthy of remark that the cases in which the invalidity of a Federal tax has been affirmed were those in which the tax was attempted to be levied upon property belonging to the State, or one of its municipalities, or was a charge upon the means and instrumentalities employed by the State, in the discharge of its ordinary functions as a government.

Many cases have arisen calling for the application of the general rules discussed and the courts have recognized that the question is not one in which a hard and fast rule may be laid down which may be applied to every case of attempted taxation of a State or Federal agency. The reason for this is that the question in each case is whether or not, under the particular facts involved, the tax constitutes an interference with the exercise of a sovereign power. The objection to it, in any case, rests not upon the fact that it is a tax but that it is an interference with the exercise of a power which is immune from interference. Even where the levying of the tax interferes with the exercise of a right possessed by the State, it may not constitute an interference with its necessary governmental powers. This is illustrated by the case of *Veazie Bank* v. *Fenno*, 8 Wall. 533. In this case the Federal Government levied a tax upon the circulation of a State bank, the question being practically the converse of that involved in *McCullough* v. *Maryland, supra.* In sustaining the validity of the tax the Supreme Court admitted that the right to create such a bank was not surrendered by the State in the grant of power to the Federal Government by the Constitution, but such a power was not one of these necessary to be kept free from interference to maintain the sovereignty of the State. The court in that case points out those functions of the State which are sovereign in the following words:

> It may be admitted that the reserved rights of the States, such as the right to pass laws, to give effect to laws through executive action, to administer justice through the courts, and to employ all necessary agencies for legitimate purposes of State government, are not proper subjects of the taxing power of Congress. But it can not be admitted that franchises granted by a State are necessarily exempt from taxation; for franchises are property, often very valuable and productive property; and when not conferred for the purpose of giving effect to some reserved power of a State, seem to be as properly objects of taxation as any other property.

And so it has been held that where the effect of the tax was merely to cause the Federal Government or the State to receive less income than it would had the tax not been imposed, it is not an interference with its sovereignty as a tax upon its property. In this connection it is noted that the courts have held proper a succession tax levied upon legacies of property to the Federal Government or the State, the effect of which tax was to lessen the amount ultimately received under the legacy. Thus, in *United States* v. *Perkins*, 163 U. S. 625, a succession tax of the State of New York was sustained, although the property charged was bequeathed by will to the United States, and in *Snyder* v. *Bettman*, 190 U. S. 249, a Federal succession tax was sustained although the bequest in question was to the City of Springfield, Ohio.

In *Railroad* v. *Peniston*, 18 Wall. 5, the court in holding that a tax upon the property of a government instrumentality was not an interference with the exercise of the governmental power to do those things which it is carrying into effect through the agent, said:

It is therefore manifest that exemption of Federal agencies from State taxation is dependent not upon the nature of the agents or upon the mode of their constitution or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does it hinder the efficient exercise of their power.

In *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 515, the right of the United States was questioned to tax such portion of the incomes of two partners in an engineering firm as represented payments made the partnership by certain States and municipalities for services rendered as consulting engineers, it being claimed that as to the employment for which they were paid they were agents of the State Governments and as such exempt from taxation. The court, after reviewing the authorities, in restating the rule as announced in *Railroad* v. *Peniston, supra*, that the fact of whether or not the tax constituted an interference was one for determination under the facts of each case as submitted, said:

As cases arise, lying between the two extremes, it becomes necessary to draw the line which separates those activities having some relation to government, which are nevertheless subject to taxation, from those which are immune. Experience has shown that there is no formula by which that line may be plotted with precision in advance. But recourse may be had to the reason upon which the rule rests, and which must be the guiding principle to control its operation. Its origin was due to the essential requirement of our constitutional system that the Federal government must exercise its authority within the territorial limits of the states; and it rests on the conviction that each government, in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other. *McCulloch* v. *Maryland, supra; Collector* v. *Day; Dobbins* v. *Commissioner of Erie County, supra.*

In a broad sense, the taxing power of either government, even when exer-cised in a manner admittedly necessary and proper, unavoidably has some effect upon the other. The burden of Federal taxation necessarily sets an economic limit to the practical operation of the taxing power of the states, and vice versa. Taxation by either the state or the Federal government affects in some measure the cost of operation of the other.

But neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. Hence the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construc-tion which permits both to function with the minimum of interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax (*South Carolina* v. *United States*, 199 U. S. 437, 461; *Flint* v. *Stone Tracy Co., supra,* at 172) or the appropriate exercise of the functions of the government affected by it. *Railroad Co.* v. *Peniston, supra,* 18 Wall, 31.

We think it clear under the decisions that had the lands in ques-tion been merely State lands burdened with no special trust and held for general State purposes, there would be no question but what petitioner, as an individual lessee for private gain, would not be entitled to exemption from Federal taxation. It could not be claimed that it was an instrumentality of the State when the lease of the land would be no more than an exercise of a right of owner-ship by the State, a right possessed by any individual and in no sense requiring an exercise of the power peculiar to sovereignty, or in the language of the court in *Flint* v. *Stone Tracy Co., supra,* " an act essential to the execution of its governmental function and which the state can only do itself." However, in the present case, it is claimed that the lands leased are a part of those ceded by the Na-tional Government to the State of Oklahoma, by the Enabling Act, for the definite and specific purpose of creating a permanent school fund to be administered in trust by the State for the maintenance of its public schools; that the acceptance of the grant created a trust in respect to such lands, undertaken by the State in its sovereign capacity, and that its every act toward performance of the trust and obtaining a school fund was one in carrying out a sovereign obligation; that in maintaining its public schools it is exercising a governmental function and that the lessees of school lands are its instrumentalities employed in the exercise of such function and ac-cordingly exempt from Federal taxation. In support of its conten-tion petitioner cites certain decisions by the Supreme Court upon questions arising in connection with leases of tax-exempt Indian lands.

In *Choctaw O. & G. R. Co.* v. *Harrison,* 235 U. S. 292, the right of the State of Oklahoma was disputed to levy upon a railroad company an occupation tax computed upon the gross sales of coal mined by it under leases to it by the Federal Government of tax-exempt Choctaw and Chicksaw Indian lands. The court held that the treaty between

these Indian tribes and the Federal Government imposed upon the latter a definite duty in respect to opening and operating these mines in their interest, and that the railroad company was the instrumentality through which this obligation was carried into effect, and as such could not be subjected to an occupation or privilege tax by the State.

In *Indian Territory Illuminating Oil Co.* v. *Oklahoma*, 240 U. S. 522, there was questioned the right of the State of Oklahoma to subject an oil and gas lease on tax-exempt Osage Indian lands to general taxation. The court held that the property in question was under the protection of the Federal Government and that the leases " have the immunity of such protection." The court further said that " it follows from these views that the assessment against the oil company, so far as it included the leases, whether as separate objects of taxation or as represented or valued by the stock of the company, is invalid." The same principal was applied in *Howard* v. *Gypsy Oil Co.*, 247 U. S. 503, and *Large Oil Co.* v. *Howard*, 248 U. S. 549, involving gross-production taxes.

In *Gillespie* v. *Oklahoma*, 257 U. S. 501, a lessee of tax exempt Indian lands, from the Federal Government, disputed the right of the State of Oklahoma to exact a tax based upon the net income derived from operations under the lease. In holding such taxes invalid the Court said:

The same considerations that invalidate a tax upon the leases invalidate a tax upon the profits of the leases, and, stopping short of theoretical possibilities, a tax upon such profits is a direct hamper upon the effort of the United States to make the best terms that it can for its wards.

It is insisted that the condition presented in this proceeding is substantially similar to the one involved in the last cited case and that upon this and the other cases cited petitioner must be considered an instrumentality employed by the State of Oklahoma in the exercise of one of its sovereign powers and that to tax its income is to interfere with the exercise of that power.

In the cases cited the lands were held by the Federal Government in trust for Indian tribes. The beneficiaries of the trust were dependent wards in respect to whom a duty rested upon the Government to exact a maximum income from the trust property. The obligation of the trust was one assumed by treaty ratified by Congress and for that reason peculiarly sacred and inviolate as involving the national honor. These treaties are obligations of sovereignty and have the same effect as treaties with foreign nations. *United States* v. *New York Indians*, 173 U. S. 464; *Turner* v. *American Baptist Missionary Foundation*, 24 Fed. Cases 14251. An obligation to develop these Indian lands and to extract their mineral resources for

these wards are ones specifically assumed by the Federal Government under the treaties, and the court has held that this laid upon the latter, as a sovereign, an obligation to obtain the best terms possible for its wards, and that to impose a tax upon the instrumentality through which it performs its duty interferes with the carrying out of its obligation. In the execution of the leases involved in the cases cited the Federal Government was not merely leasing its public lands in securing revenue, but carrying out a sovereign treaty obligation.

We do not see in the facts presented in the proceeding before us a condition similar to that involved in leases of Indian lands. In the language of the court in *Metcalf & Eddy* v. *Mitchell, supra;* in referring to the *Gillespie* case, the condition there involved was one of taxation by one government of "an agency created and controlled by the other, exclusively to enable it to perform a governmental function." We have no such condition here. Petitioner is merely one of many lessees of school lands and if an instrumentality of the State in its furnishing of public education it is only one of many agencies of various kinds and characters, made use of as an incident of the performance of its governmental function. In this connection see *Choctaw O. & G. R. Co.* v. *Mackay*, 256 U. S. 531, holding that a tax upon merely one of several agencies employed by the United States in discharging its obligations toward its Indian wards can not be considered as an interference with its exercise of its governmental power to carry out that obligation. It is not controlled or directed by the State to any further extent than any other lessee of public lands. We can not see in the two cases a similarity controlling the conclusion to be arrived at in the present case.

It is true that these lands were received by the State of Oklahoma from the Federal Government to be used for the creation of a school fund but can it be said that the act of the State in leasing them is, in view of that fact, of a different and more sovereign character than the leasing of its other public lands to obtain revenue for general State purposes. We can see in the trust arising from the ceding of these lands to the State of Oklahoma for the creating of a school fund nothing more than a designating or setting aside of this property for this purpose. The authority of the State in respect to these lands was, in so far as control and disposition of them was concerned, substantially the same as in respect of its other public lands, except that the proceeds from sale or lease should not go into its general revenues but into a permanent school fund, which was to be maintained intact, and the income therefrom used for its public schools. Can it be said that one who leases such lands from the Commissioners of the Land Office, the instrumentality through which the State of Oklahoma controls and disposes of all of its public lands,

is thereby constituted an instrumentality of the State in the performance of its governmental function of maintaining public schools, or an instrumentality of that State in the performance of a trust in respect to such lands assumed by it in its sovereign capacity, and therefore exempt from income tax upon the ground that the denial of such exemption would interfere with the securing of a more generous rental from the lessee and would lessen to that extent the amount derived for the school fund and ultimately affect a lessening of the income to be derived in the future from that fund for school maintenance, and that this would interfere with the performance by the State of its governmental function? Can it be said that such a lessee is an instrumentality necessary to the performance of the governmental function and that a tax upon its income incapacitates it to perform properly the service for which it is employed?

Let us consider for the moment the extent to which the rule insisted upon by petitioner would lead. It can not be questioned that the administration by the State of the permanent school fund secured from the sale or lease of the ceded lands is of no less sovereign character than its administration of the lands themselves in the obtaining of that fund. Under the statutes of Oklahoma this fund is administered by the Commissioners of the Land Office and the income therefrom, which the Enabling Act provides shall be used for the maintenance of the public schools, is obtained by loaning it on first mortgages on land and by investment in certain specified classes of public bonds. If an individual who obtains the use of school lands from the Commissioners of the Land Office for a rental is an instrumentality of the State in the carrying out of its governmental power to maintain public schools, as is claimed, so is the individual who obtains the use of a portion of the school fund for the payment of an interest charge. If the first is exempt from taxation by the Federal Government, we see no reason why the second could not claim the same immunity, thus putting it in the power of any individual or corporation to become a tax exempt governmental instrumentality of the State of Oklahoma by merely securing a loan from the school fund.

Can it be said that the lessee of school lands stands upon a different footing from others with whom the State deals in carrying out its function of providing public education? His connection with public education is more remote than one who builds a public school under contract with the State and whose total income from the work is paid him directly from school funds, and yet it could not be argued in the light of the decisions cited that the latter was a tax-exempt instrumentality of the State? *New York Trust Co.* v. *United States*, 63 Ct. Cls. 100; *James A. Sackley Co.* v. *United States*, 65 Ct. Cls. 304. In *American Book Co.* v. *Shelton*, 117 Tenn. 745; 100 S. W.

725, a statute of Tennessee had provided for the use of uniform text books in the public schools and for the creation of a State text book commission which should determine the books to be used and provide for their being supplied to the schools, the commission being empowered to contract with some publishing house, through public bid, for the maintaining of a depot in the State of the books selected from which they would be supplied and fixing the prices at which they might be sold. The plaintiff, as the successful bidder with whom the State contracted through the commission, claimed immunity from State *ad valorem* or privilege taxation, upon the ground that it was an instrumentality through which the State performed its sovereign function of providing public education. The court in denying it the immunity claimed, said:

> If the fact that the book company has a contract with the State gave it immunity from taxation, the same rule would likewise exempt a manufacturer who might sell clothes for the convicts, the stationer who furnishes supplies to the State officers, and the printer who publishes the proceedings of the Legislature or the Supreme Court Reports, and apply to the ice dealer, who purchases his stock from the Board of Prison Commissioners, to the coal dealer who procures his coal from the State Commission, and to the dealer in hosiery who buys the output of the prison factory.

We do not think that petitioner under the facts here proven, as a lessee of public school lands in Oklahoma, for private and individual profit, stands in a position different, in so far as liability for Federal income tax is concerned, from a lessee of other property of the State or property of a private individual. We can not see in the taxing by the Federal Government of its income therefrom an interference with the exercise by that State of one of its governmental powers.

The second issue involves the question of whether petitioner is entitled to a paid-in surplus in the amount of $58,538, the alleged value of the improvements on the lease on the date of its acquisition in January, 1914. In advertising for bids for releasing the land in question the Commissioners of the Land Office notified prospective bidders that the equipment on the land had been appraised at a value of $55,800, that the land contained 15 producing wells and that the oil production from said wells averaged 8,113 barrels per month from January 1 to November 1, 1913. The testimony establishes that the wells drilled had an aggregate depth of 29,269 feet, the reproductive cost of which amounted to $58,538 in January, 1914. The testimony further establishes that, based upon the estimated production of oil from those wells over the five-year period of the lease and upon the then prevailing price of oil, the present net worth of those improvements in January, 1914, amounted to $58,710. Upon all the facts of record, we are of the opinion that in January, 1914, the improvements, consisting of 15 producing wells, had an actual

cash value of $58,538 which attached to the lease awarded to Sutton, for the lessee acquired a 5-year interest in those wells, together with a preference right to release the land for an additional five years. Sutton and his associate paid in to petitioner the physical equipment on the leased land, having an actual cash value of $55,800, and in addition the lease, having an actual cash value of $58,538, for $25,000 par value of petitioner's stock, $25,000 of its bonds, and its note for $5,800. No evidence has been submitted as to the payment of the said bonds and note, but respondent raised no question with respect thereto and has included in petitioner's invested capital the amount of $55,800, representing the cost of the physical equipment to petitioner as aforesaid. The only question presented to the Board is whether petitioner is entitled to additional invested capital in the amount of $58,538 as a paid-in surplus. The lease, of the actual cash value of $58,538, having been paid in for stock in addition to other property paid in for the stock issued and of a value equal to the par value thereof, we are of the opinion that petitioner is entitled to include in invested capital the amount of $58,538 as a paid-in surplus under the provisions of section 207 of the Revenue Act of 1917, and section 326 of the Revenue Act of 1918.

With reference to the third issue, the value of $58,538 in January, 1914, of the improvements on the lease should be included in the basis upon which respondent computed the allowable deduction for depletion.

The fourth issue is relative to the proration of prior years' taxes out of invested capital for each of the years involved. Such proration should be made upon the basis of the correct amount of taxes due as computed pursuant to this decision and in accordance with the Commissioner's regulations.

The last issue is relative to the respondent's reduction of petitioner's invested capital for the year 1918 on account of a tentative tax computed on earnings to date of a dividend paid on November 4, 1918, which action must be held erroneous under authority of *L. S. Ayers & Co.*, 1 B. T. A. 1135.

Reviewed by the Board.

*Judgment will be entered pursuant to Rule 50.*

GREEN, dissenting: The petitioner herein has leased certain oil and gas lands from the State of Oklahoma. The lands covered by the lease were part of the lands which were conveyed by Congress to the State of Oklahoma at the time of its admission to statehood, and the restrictions which were attached to this land by the terms of the Enabling Act were accepted by the State of Oklahoma in its constitution and subsequently the legislature of the State passed such legislation as was necessary to carry out the terms imposed by Congress. These

lands are conveniently described as school lands. The major question in this proceeding is the right of the Federal Government to impose a tax upon the income derived by this petitioner from its operation of its leases on these State-owned school lands.

That the lands here under consideration are the property of the State of Oklahoma is not questioned. Likewise it appears to be conceded that the erection and maintenance of public schools is an essential governmental function of the State. This could not be otherwise in view of the Enabling Acts and other legislation under and by virtue of which Oklahoma became a State and the United States conveyed to it the school lands, the income of which is here under consideration. The issue has been narrowed to the sole question of the right to tax the income derived by a lessee from State-owned school lands.

The leading case on the right of a State to tax the income of a lessee of Federal lands is *Gillespie* v. *State of Oklahoma*, 257 U. S. 501. In holding that such income could not be taxed the United States Supreme Court said:

*A tax upon the leases is a tax upon the power to make them, and could be used to destroy the power to make them.* 240 U. S. 530. *The steps from this to the invalidity of the tax upon income from the leases is not long.*

In cases where the principal is absolutely immune from interference, and inquiry is allowed into the sources from which net income is derived, and if a part of it comes from such a source, the tax is pro tanto void (*Pollock* v. *Farmers Loan & Trust Co.*, 157 U. S. 429), a rule lately illustrated by *Evans* v. *Gore*, 253 U. S. 245, and applied in a case somewhat like the present by the Supreme Court of Hawaii (*Oahu Ry. & Land Co.* v. *Pratt*, 14. Haw. 126.) Whether this property could be taxed in any other form or not, it cannot be reached as profits or income from leases such as those before us. The same considerations that invalidate a tax upon the leases invalidate a tax upon the profits of the leases; and, stopping short of theoretical possibilities, a tax upon such profits is a direct hamper upon the effort of the United States to make the best terms that it can for its wards. (Italics supplied.)

This case is the converse of the *Gillespie* case. There the State sought to tax income derived by the lessee of Federal lands. Here the United States seek to tax the income derived by the lessee of State lands.

It is also the law that the United States may not tax the agencies' instrumentalities or property of the States. In *Van Brocklin* v. *State of Tennessee*, 117 U. S. 151, the court said:

In *Collector* v. *Day*, 11 Wall. 113, it was adjudged that Congress had no power, even by an act taxing all income, to levy a tax upon the salaries of judicial officers of a State, for reasons similar to those in which it had been held in *Dobbins* v. *Erie County Commissioners*, 16 Pet. 435, that a State could not tax the salaries of officers of the United States. Mr. Justice Nelson, in delivering judgment, said: "The general government, and the States, although both exist within the same territorial limits, are separate and distinct sover-

eignties, acting separately and independently of each other, within their respective spheres. The former in its appropriate sphere is supreme; but the States, within the limits of their powers not granted, or, in the language of the Tenth Amendment, 'reserved', are as independent of the general government as that government within its sphere is independent of the States." 11 Wall. 124.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The reasons for exempting all the property and income of a State, or of a municipal corporation, which is a political division of the State, from federal taxation, equally require the exemption of all the property and income of the national government from State taxation.

If there were any remaining doubts, the court set them at rest in *Pollock* v. *Farmers Loan & Trust Co.*, 157 U. S. 584, when it said:

As the States cannot tax the powers, the operations, or the property of the United States, nor the means which they employ to carry their powers into execution, so it has been held that the United States have no power under the Constitution to tax either the instrumentalities or the property of a State.

The United States have such powers and rights as have been granted to them by the several States. There is nothing in the Constitution which limits the right of either to tax the other. That these limitations exist is, however, beyond question. They grew out of the common necessity that each, within its own sphere, be free from interference from the other. I have been unable to find any intimation that the limitations are more rigorous in the case of one than in the case of the other.

If, then, as was held in the *Gillespie* case, the State may not tax the income derived by the lessee from the operation of lands leased from an instrumentality of the United States, it follows inevitably that the United States may not tax the income derived by a lessee from the operations of lands leased from the State of Oklahoma or one of its instrumentalities. The effect upon the lessor, of taxing the income of the lessee, is the same irrespective of which is the lessor and the same rule should be applied to either case. The income derived by a lessee on public school lands of the State of Oklahoma is not, in my opinion, subject to Federal taxation.

MARQUETTE, PHILLIPS, and SIEFKIN agree with this dissent.