78 U.S. 113 (1870)
11 Wall. 113
THE COLLECTOR
v.
DAY.
Supreme Court of United States.

*114 Mr. Akerman, Attorney-General, and Mr. John C. Ropes (with a brief of Mr. Ropes), for the collector, plaintiff in error.
Mr. Dwight Foster, contra.
*122 Mr. Justice NELSON delivered the opinion of the court.
The case presents the question whether or not it is competent for Congress, under the Constitution of the United States, to impose a tax upon the salary of a judicial officer of a State?
In Dobbins v. The Commissioners of Erie County,[*] it was decided that it was not competent for the legislature of a State to levy a tax upon the salary or emoluments of an officer of the United States. The decision was placed mainly upon the ground that the officer was a means or instrumentality employed for carrying into effect some of the legitimate powers of the government, which could not be interfered *123 with by taxation or otherwise by the States, and that the salary or compensation for the service of the officer was inseparably connected with the office; that if the officer, as such, was exempt, the salary assigned for his support or maintenance while holding the office was also, for like reasons, equally exempt.
The cases of McCulloch v. Maryland,[*] and Weston v. Charleston,[] were referred to as settling the principle that governed the case, namely, "that the State governments cannot lay a tax upon the constitutional means employed by the government of the Union to execute its constitutional powers."
The soundness of this principle is happily illustrated by the Chief Justice in McCulloch v. Maryland.[] "If the States," he observes, "may tax one instrument employed by the government in the execution of its powers, they may tax any and every other instrument. They may tax the mail; they may tax the mint; they may tax patent-rights; they may tax judicial process; they may tax all the means employed by the government to an excess which would defeat all the ends of government." "This," he observes, "was not intended by the American people. They did not design to make their government dependent on the States." Again,[§] "That the power of taxing it (the bank) by the States may be exercised so far as to destroy it, is too obvious to be denied." And, in Weston v. The City of Charleston, he observes:[] "If the right to impose the tax exists, it is a right which, in its nature, acknowledges no limits. It may be carried to any extent within the jurisdiction of the State or corporation which imposes it which the will of each State and corporation may prescribe."
It is conceded in the case of McCulloch v. Maryland, that the power of taxation by the States was not abridged by the grant of a similar power to the government of the Union; that it was retained by the States, and that the power is to be concurrently exercised by the two governments; and also that there is no express constitutional prohibition upon the *124 States against taxing the means or instrumentalities of the general government. But, it was held, and, we agree properly held, to be prohibited by necessary implication; otherwise, the States might impose taxation to an extent that would impair, if not wholly defeat, the operations of the Federal authorities when acting in their appropriate sphere.
These views, we think, abundantly establish the soundness of the decision of the case of Dobbins v. The Commissioners of Erie, which determined that the States were prohibited, upon a proper construction of the Constitution, from taxing the salary or emoluments of an officer of the government of the United States. And we shall now proceed to show that, upon the same construction of that instrument, and for like reasons, that government is prohibited from taxing the salary of the judicial officer of a State.
It is a familiar rule of construction of the Constitution of the Union, that the sovereign powers vested in the State governments by their respective constitutions, remained unaltered and unimpaired, except so far as they were granted to the government of the United States. That the intention of the framers of the Constitution in this respect might not be misunderstood, this rule of interpretation is expressly declared in the tenth article of the amendments, namely: "The powers not delegated to the United States are reserved to the States respectively, or, to the people." The government of the United States, therefore, can claim no powers which are not granted to it by the Constitution, and the powers actually granted must be such as are expressly given, or given by necessary implication.
The general government, and the States, although both exist within the same territorial limits, are separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres. The former in its appropriate sphere is supreme; but the States within the limits of their powers not granted, or, in the language of the tenth amendment, "reserved," are as independent of the general government as that government within its sphere is independent of the States.
*125 The relations existing between the two governments are well stated by the present Chief Justice in the case of Lane County v. Oregon.[*] "Both the States and the United States," he observed, "existed before the Constitution. The people, through that instrument, established a more perfect union, by substituting a National government, acting with ample powers directly upon the citizens, instead of the Confederate government, which acted with powers greatly restricted, only upon the States. But, in many of the articles of the Constitution, the necessary existence of the States, and within their proper spheres, the independent authority of the States, are distinctly recognized. To them nearly the whole charge of interior regulation is committed or left; to them, and to the people, all powers, not expressly delegated to the National government, are reserved." Upon looking into the Constitution it will be found that but a few of the articles in that instrument could be carried into practical effect without the existence of the States.
Two of the great departments of the government, the executive and legislative, depend upon the exercise of the powers, or upon the people of the States. The Constitution guarantees to the States a republican form of government, and protects each against invasion or domestic violence. Such being the separate and independent condition of the States in our complex system, as recognized by the Constitution, and the existence of which is so indispensable, that, without them, the general government itself would disappear from the family of nations, it would seem to follow, as a reasonable, if not a necessary consequence, that the means and instrumentalities employed for carrying on the operations of their governments, for preserving their existence, and fulfilling the high and responsible duties assigned to them in the Constitution, should be left free and unimpaired, should not be liable to be crippled, much less defeated by the taxing power of another government, which power acknowledges no limits but the will of the legislative *126 body imposing the tax. And, more especially, those means and instrumentalities which are the creation of their sovereign and reserved rights, one of which is the establishment of the judicial department, and the appointment of officers to administer their laws. Without this power, and the exercise of it, we risk nothing in saying that no one of the States under the form of government guaranteed by the Constitution could long preserve its existence. A despotic government might. We have said that one of the reserved powers was that to establish a judicial department; it would have been more accurate, and in accordance with the existing state of things at the time, to have said the power to maintain a judicial department. All of the thirteen States were in the possession of this power, and had exercised it at the adoption of the Constitution; and it is not pretended that any grant of it to the general government is found in that instrument. It is, therefore, one of the sovereign powers vested in the States by their constitutions, which remained unaltered and unimpaired, and in respect to which the State is as independent of the general government as that government is independent of the States.
The supremacy of the general government, therefore, so much relied on in the argument of the counsel for the plaintiff in error, in respect to the question before us, cannot be maintained. The two governments are upon an equality, and the question is whether the power "to lay and collect taxes" enables the general government to tax the salary of a judicial officer of the State, which officer is a means or instrumentality employed to carry into execution one of its most important functions, the administration of the laws, and which concerns the exercise of a right reserved to the States?
We do not say the mere circumstance of the establishment of the judicial department, and the appointment of officers to administer the laws, being among the reserved powers of the State, disables the general government from levying the tax, as that depends upon the express power "to lay and collect taxes," but it shows that it is an original inherent *127 power never parted with, and, in respect to which, the supremacy of that government does not exist, and is of no importance in determining the question; and further, that being an original and reserved power, and the judicial officers appointed under it being a means or instrumentality employed to carry it into effect, the right and necessity of its unimpaired exercise, and the exemption of the officer from taxation by the general government stand upon as solid a ground, and are maintained by principles and reasons as cogent as those which led to the exemption of the Federal officer in Dobbins v. The Commissioners of Erie from taxation by the State; for, in this respect, that is, in respect to the reserved powers, the State is as sovereign and independent as the general government. And if the means and instrumentalities employed by that government to carry into operation the powers granted to it are, necessarily, and, for the sake of self-preservation, exempt from taxation by the States, why are not those of the States depending upon their reserved powers, for like reasons, equally exempt from Federal taxation? Their unimpaired existence in the one case is as essential as in the other. It is admitted that there is no express provision in the Constitution that prohibits the general government from taxing the means and instrumentalities of the States, nor is there any prohibiting the States from taxing the means and instrumentalities of that government. In both cases the exemption rests upon necessary implication, and is upheld by the great law of self-preservation; as any government, whose means employed in conducting its operations, if subject to the control of another and distinct government, can exist only at the mercy of that government. Of what avail are these means if another power may tax them at discretion?
But we are referred to the Veazie Bank v. Fenno,[*] in support of this power of taxation. That case furnishes a strong illustration of the position taken by the Chief Justice in McCulloch v. Maryland, namely, "That the power to tax involves the power to destroy."
*128 The power involved was one which had been exercised by the States since the foundation of the government, and had been, after the lapse of three-quarters of a century, annihilated from excessive taxation by the general government, just as the judicial office in the present case might be, if subject, at all, to taxation by that government. But, notwithstanding the sanction of this taxation by a majority of the court, it is conceded, in the opinion, that "the reserved rights of the States, such as the right to pass laws; to give effect to laws through executive action; to administer justice through the courts, and to employ all necessary agencies for legitimate purposes of State government, are not proper subjects of the taxing power of Congress." This concession covers the case before us, and adds the authority of this court in support of the doctrine which we have endeavored to maintain.
JUDGMENT AFFIRMED.
Mr. Justice BRADLEY, dissenting.
I dissent from the opinion of the court in this case, because, it seems to me that the general government has the same power of taxing the income of officers of the State governments as it has of taxing that of its own officers. It is the common government of all alike; and every citizen is presumed to trust his own government in the matter of taxation. No man ceases to be a citizen of the United States by being an officer under the State government. I cannot accede to the doctrine that the general government is to be regarded as in any sense foreign-or antagonistic to the State governments, their officers, or people; nor can I agree that a presumption can be admitted that the general government will act in a manner hostile to the existence or functions of the State governments, which are constituent parts of the system or body politic forming the basis on which the general government is founded. The taxation by the State governments of the instruments employed by the general government in the exercise of its powers, is a very different thing. Such taxation involves an interference with the powers of *129 a government in which other States and their citizens are equally interested with the State which imposes the taxation. In my judgment, the limitation of the power of taxation in the general government, which the present decision establishes, will be found very difficult of control. Where are we to stop in enumerating the functions of the State governments which will be interfered with by Federal taxation? If a State incorporates a railroad to carry out its purposes of internal improvement, or a bank to aid its financial arrangements, reserving, perhaps, a percentage on the stock or profits, for the supply of its own treasury, will the bonds or stock of such an institution be free from Federal taxation? How can we now tell what the effect of this decision will be? I cannot but regard it as founded on a fallacy, and that it will lead to mischievous consequences. I am as much opposed as any one can be to any interference by the general government with the just powers of the State governments. But no concession of any of the just powers of the general government can easily be recalled. I, therefore, consider it my duty to at least record my dissent when such concession appears to be made. An extended discussion of the subject would answer no useful purpose.
NOTES
[*] 16 Peters, 435.
[*] 4 Wheaton, 316.
[] 2 Peters, 449.
[] 4 Wheaton, 432.
[§] Ib. 427.
[] 2 Peters, 466.
[*] 7 Wallace, 76.
[*] 8 Wallace, 533.