David K. Cochrane, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 60428.   Promulgated October 11, 1932.

*E. Barrett Prettyman, Esq.*, for the petitioner.
*C. A. Ray, Esq.*, for the respondent.

OPINION.

Smith: The only question for our determination in this proceeding is whether the fees received by the petitioner in 1930 as master in chancery of the Superior Court of Cook County, Illinois, are includable in his gross income and subject to the Federal income tax. The material facts are stipulated.

The petitioner was first appointed a master in chancery of the Superior Court of Cook County, Illinois, in 1916, to fill a vacancy and was reappointed by the court for succeeding statutory terms of two years, the first of which commenced on December 1, 1917, and the last on December 1, 1929. He served in such capacity during the entire year 1930, for which services he received fees paid by litigants before the court in a total amount of $953.21.

In 1930 the petitioner was also engaged in the practice of law and was a member of the law partnership of Cochrane & George, 35 North Dearborn Street, Chicago, Illinois. In connection with his private practice, the petitioner incurred the usual office expenses. He reported as income from the partnership in 1930 a net amount of $7,192.98.

The appointment of masters in chancery is authorized by the statutes of Illinois (see chapter 90, Smith-Hurd Illinois Revised Statutes, 1929). The statutory term of office is two years. The duties of the office are prescribed by the statute, which also provides for compensation in the form of fees, some of which are statutory and some fixed by the court. The masters are required to take an oath of office and to give bond.

Since there is no governing statutory provision in the income tax laws relating to the exemption or exclusion of the income of a state officer or employee for the year 1930 or for any year subsequent to 1924 (see section 1211, Revenue Act of 1926), any exclusion or exemption of the income in question must rest upon constitutional grounds. The income is taxable unless the imposition of the tax

by the Federal Government would result in "a charge upon the means and instrumentalities employed by the State, in the discharge of its ordinary functions as a Government." *South Carolina* v. *United States*, 199 U. S. 437. See also *Collector* v. *Day*, 11 Wall. 113; *United States* v. *Railroad Co.*, 17 Wall. 322; *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; *Frey* v. *Woodworth*, 2 Fed. (2d) 725; *Hugh W. Ogden*, 24 B. T. A. 1239; *G. Ridgely Sappington*, 25 B. T. A. 1385.

It must be conceded, we think, that the petitioner, as a master in chancery of the Superior Court of Cook County, Illinois, was an officer of that state.

An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation. *United States* v. *Hartwell*, 6 Wall. 385, 18 L. Ed. 830; *Hall* v. *Wisconsin*, 103 U. S. 5, 26 L. Ed. 302. * * * [*Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514.]

All of these requirements were met substantially in the petitioner's case. The appointment, tenure, duration and duties were all authorized by the state statutes. The petitioner's compensation consisted of fees, which were in part fixed by statute and in part by the court in the manner of other court costs. We held in *Hugh W. Ogden*, *supra*, that an auditor appointed by a judge of the Superior Court of Massachusetts, acting on authority of the state statutes, was an officer or employee of that state within the meaning of section 1211 of the Revenue Act of 1926, and that such office was analogous to the office of master in chancery.

We think it can not be questioned that the petitioner was an instrumentality of the State of Illinois engaged in an essential governmental function. As a master in chancery of the Superior Court of Cook County, Illinois, he was an integral part of the judicial system of the state.

The respondent takes the position that since the compensation sought to be taxed was not paid to the petitioner by the state, the imposition of the tax thereon by the Federal Government does not constitute a burden upon the state and does not come within the constitutional exemption.

A study of the leading cases with a view to ascertaining the reason for the rule establishing the exemption does not lead us to this conclusion. We do not perceive that the constitutional objections to the imposition of a tax by either the Federal Government or the States upon the governmental instrumentalities of the other obtain only where the financial burden of the tax ultimately falls upon the State or the Federal Government. One of the earliest Supreme Court cases in which this question was discussed in *McCulloch* v.

*State of Maryland*, 4 Wheat. 315, in which a tax imposed on a Federal bank by the State of Maryland was held unconstitutional. "The power of taxation," said Chief Justice Marshall, speaking for the court, "is an incident of sovereignty, and is coextensive with that to which it is an incident." He further stated:

That the power to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create; that there is a plain repugnance, in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the control, are propositions not to be denied. * * *

In *Collector* v. *Day, supra*, there arose a question of the right of the Federal Government to tax the salary of a judicial officer of the State of Massachusetts. The court there said:

These views, we think, abundantly establish the soundness of the decision of the case of *Dobbins* v. *The Commissioners of Eric*, which determined that the States were prohibited, upon a proper construction of the Constitution, from taxing the salary or emoluments of an officer of the government of the United States. And we shall now proceed to show that, upon the same construction of that instrument, and for like reasons, that government is prohibited from taxing the salary of the judicial officer of a State.

* * * * * * *
* * * Such being the separate and independent condition of the States in our complex system, as recognized by the Constitution, * * * it would seem to follow, as a reasonable, if not a necessary consequence, that the means and instrumentalities employed for carrying on the operations of their governments, for preserving their existence, and fulfilling the high and responsible duties assigned to them in the Constitution, should be left free and unimpaired, should not be liable to be crippled, much less defeated by the taxing power of another government, which power acknowledges no limits but the will of the legislative body imposing the tax. And, more especially, those means and instrumentalities which are the creation of their sovereign and reserved rights, one of which is the establishment of the judicial department, and the appointment of officers to administer their laws. * * *

Also, in *Flint* v. *Stone Tracy Co., supra*, it was said:

The cases unite in exempting from Federal taxation the means and instrumentalities employed in carrying on the governmental operations of the state. The exercise of such rights as the establishment of a judiciary, the employment of officers to administer and execute the laws, and similar governmental functions, cannot be taxed by the Federal government. *The Collector* v. *Day*, 11 Wall. 113, 20 L. ed. 122; *United States* v. *Baltimore & O. R. Co.*, 17 Wall. 322, 21 L. ed. 597; *Ambrosini* v. *United States*, 187 U. S. 1. * * *

As we have pointed out above, it seems undeniable that the petitioner, as a master in chancery of the court of Illinois, was an officer of that state who rendered services in aid of the administration of justice.

In the more recent case of *Metcalf & Eddy* v. *Mitchell, supra*, the court in a careful review of this question strictly applied the rule

established in the earlier cases. After finding that the recipients of the income sought to be taxed under the War Revenue Act of October 13, 1917, were not officers or employees of the state, the court went on to say:

We pass to the more difficult question whether Congress had the constitutional power to impose the tax in question, and this must be answered by ascertaining whether its effect is such as to bring it within the purview of those decisions holding that the very nature of our constitutional system of dual sovereign governments is such as impliedly to prohibit the federal government from taxing the instrumentalities of a state government, and in a similar manner to limit the power of the states to tax the instrumentalities of the federal government. See, as to federal taxation on state instrumentalities, [citing *The Collector* v. *Day, supra; United States* v. *Railroad Co., supra; McCulloch* v. *State of Maryland, supra,* and others].

Just what instrumentalities of either a state or the federal government are exempt from taxation by the other cannot be stated in terms of universal application. But this court has repeatedly held that those agencies through which either government immediately and directly exercises its sovereign powers are immune from the taxing power of the other. * * *

\* \* \* \* \* \* \*

As cases arise, lying between the two extremes, it becomes necessary to draw the line which separates those activities having some relation to government, which are nevertheless subject to taxation, from those which are immune. Experience has shown that there is no formula by which that line may be plotted with precision in advance. But recourse may be had to the reason upon which the rule rests, and which must be the guiding principle to control its operation. Its origin was due to the essential requirement of our constitutional system that the federal government must exercise its authority within the territorial limits of the states; and it rests on the conviction that each government in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other. *McCulloch* v. *Maryland, supra; Collector* v. *Day, supra; Dobbins* v. *Commissioners of Erie County, supra.*

\* \* \* \* \* \* \*

While it is evident that in one aspect the extent of the exemption must finally depend upon the effect of the tax upon the functions of the government alleged to be affected by it, still the nature of the governmental agencies or the mode of their constitution may not be disregarded in passing on the question of tax exemption; for it is obvious that an agency may be of such a character or so intimately connected with the exercise of a power or the performance of a duty by the one government, that any taxation of it by the other would be such a direct interference with the functions of government itself as to be plainly beyond the taxing power.

The last paragraph quoted above emphasizes the unsoundness of the respondent's position in the instant case that the sole test to be applied is whether the imposition of the tax constitutes a burden in the material sense, that is, a financial burden upon the state. The immunity relates to all governmental agencies " of such a character or so intimately connected with the exercise of a power or the performance of a duty " that their taxation in any manner whatever

would constitute " a direct interference with the functions of government." The petitioner, serving in his capacity of master of chancery, was such an agency of the State of Illinois.

The still more recent case of *Fox Film Corp.* v. *Doyal*, 286 U. S. 123, cited by the respondent, does not limit the application of this rule. The question there involved was whether the state had a right to tax copyright royalties, which question the court answered in the affirmative. In its opinion in that case the court restated the rule, as established by the earlier cases, governing the immunity from taxation of all governmental agencies.

The respondent also cites *Miller* v. *McCaughn*, 22 Fed. (2d) 165; affd., 27 Fed. (2d) 140. In that case the court held taxable the income received by an attorney appointed by judges of the orphans' court in Philadelphia, Pennsylvania, as auditor to investigate the financial responsibility of surety companies applying to the court to furnish surety bonds. The compensation for such services was paid from funds contributed by the applying surety companies. The court there found that the taxpayer was not an officer or an employee of the State of Pennsylvania; that his employment was not authorized by any state statute; that he did not receive any pay from the state; that no power of the state was crippled or lessened by the imposition of the tax; and that the income in question was therefore taxable. The facts are different in the instant case. The office held by the petitioner was created by state statutes which also prescribe the incidents of such office. The petitioner was an officer of the state.

We think that *Miller* v. *McCaughn*, *supra*, is not authority for the proposition that the source of the income of a state officer alone determines its taxability by the Federal Government. In *Warwick* v. *Bettman*, 102 Fed. 127; affd., 108 Fed. 46, the court in holding that the bond required of a notary public appointed by the state was not subject to the stamp tax imposed by the War Revenue Act of June 13, 1898, said:

\* \* \* They are officers of the state, charged with the performance of important duties, and invested with the powers necessary for such performance. They are officers and agents of the state who render services in aid of the administration of justice, and are employed by the state in the exercise of the functions belonging to it in its ordinary governmental capacity. The tax collected from the plaintiff was a tax on his right to qualify, in conformity with the law of Ohio, for the office to which he had been appointed, and was a restraint upon his duty to qualify, which might be made practically prohibitive, and was a restraint upon the state in the exercise of its function in the appointment and qualification of its officers and agents for ordinary governmental purposes, and was therefore illegal. \* \* \*

In many of the states the so-called fee system is widely employed as a means of providing compensation for state, county, and munici-

pal officers employed in the performance of duties clearly of a strictly governmental nature. The alternative of the fee system would necessarily require the payment of the compensation of these officers out of public funds.

We are of the opinion that the compensation earned by the petitioner serving in the capacity as a master in chancery of the Superior Court of Cook County, Illinois, is exempt from taxation by the Federal Government.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*