J. RUSSELL WAIT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KATHARYN WAIT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 75772, 75773.   Promulgated January 27, 1937.

*D. A. Simmons, Esq.,* for the petitioners.
*Willis R. Lansford, Esq.,* and *Edward M. Woolf, Esq.,* for the respondent.

### OPINION.

BLACK: These proceedings, consolidated for hearing and report, involve the redetermination of deficiencies in income tax for 1932 of $91.23 in the case of J. Russell Wait and $116.40 in the case of Katharyn Wait.

There is only one issue and it is common to both proceedings, and that is whether the salary of J. Russell Wait paid to him by the Harris County Houston Ship Channel Navigation District for his services during the taxable year is subject to Federal income tax.

Petitioners, husband and wife, residing in the State of Texas, filed separate income tax returns on the community property basis. Neither reported any of the salary of $9,000 in question. Respondent has determined that such salary is taxable and has added one-half thereof to the reported income of each of the petitioners. The parties agree that if the salary is taxable the deficiencies are correct.

The facts were stipulated and no separate findings of fact are necessary. We will state such of the facts that have been stipulated as seem necessary to an understanding of the issue which we are to decide.

Prior to, during, and since the taxable year J. Russell Wait, hereinafter to be called the petitioner, husband of Katharyn Wait, served as general manager and secretary of the board of commissioners of the Harris County Houston Ship Channel Navigation District, hereinafter referred to as the district, at an annual salary of $9,000.

The statutes of Texas enacted under the provisions of article 3, section 52, of the state constitution, authorize the creation of navigation districts for improving "rivers, bays, creeks, streams and canals within or adjacent to such districts, and construct and maintain canals and waterways to permit of navigation or in aid thereof, and may issue bonds in payment therefor as hereinafter provided." Art. 8198, Vernon's Annotated Texas Statutes. A district wholly within one county is created, briefly stated, by the filing of a petition of resident property owners to the commissioners' court, followed by a hearing before the court after due notice, and an election if the findings of the court are in favor of the petitioners. Arts. 8200 to 8208, inclusive. The District was created in 1910 pursuant to these statutes and its powers were continued and extended in 1922 by a vote of the people at an election.

The jurisdiction of the District is coextensive with the limits of Harris County, Texas, and extends to the Gulf of Mexico.

The District is authorized to issue bonds not in excess of 10 percent of the assessed value of the real property in the navigation district. Art. 8236. In 1911 the District issued bonds in the amount of $1,250,-000, which, with an equal amount provided by Congress, it contributed to commence the dredging of a 25-foot channel from Houston to the Gulf of Mexico. In 1919 additional bonds in the amount of $1,500,000 were issued to match an equal amount appropriated by Congress to deepen the channel to a depth of 30 feet. In 1914 bonds in the amount of $250,000 were issued by the District and contributed with an equal amount appropriated by Congress to buy two dredges for use in maintaining the channel.

The District has the:

\* \* \* right, power and authority to acquire, purchase, take over, construct, maintain, operate, develop and regulate wharves, docks, warehouses, grain elevators, bunkering facilities, belt railroads, floating plants, lighterage, lands, towing facilities, and all other facilities or aids incident to or necessary to the operation or development of ports or waterways, within the district and extending to the Gulf of Mexico, as provided in this subdivision. Article 8229.

Such powers are acquired by a petition of the navigation board to the commissioners' court, a hearing thereon, and, if approved, an election to determine whether the District shall avail itself of the power.

The Harbors and Rivers Act of March 2, 1909, declared it to be the policy of Congress that water terminals are essential to all cities located on harbors or navigable waterways and that at least one public terminal shall be constructed, owned, and regulated by a municipality or other public agency of the state and open to all on equal terms. Pursuant to such declaration of policy, and in accordance with authority given by the voters in the District, in 1913 the

District issued an additional $4,000,000 in bonds to purchase land and build wharves, a grain elevator, and a switch railroad, and make the facilities open to all on equal terms. In 1924 additional bonds in the amount of $400,000 were voted to extend the switch railroad and buy a fireboat as a public facility to operate on the channel for the protection of life and property. In 1927 bonds in the amount of $1,500,000 were voted to purchase land to add to the wharves, grain elevator, and other facilities. In 1930 additional bonds in the amount of $2,923,000 were voted for wharves, an elevator, buying land for Government uses, dumping grounds, etc.

The District is governed by a board of five commissioners appointed under the provisions of a state statute, two by the County Commissioners' Court of Harris County, Texas, two by the City Council of Houston, and the fifth, the chairman, is appointed by the court and council, acting jointly. The commissioners receive no compensation for their services. The commissioners constitute the pilot board and supervise and appoint all pilots operating in the Houston Ship Channel, fix pilotage rates, and make and enforce rules and regulations governing the pilots in the port and District. They also have power to employ such persons as they deem necessary for the construction, maintenance, operation, and development of the District and its facilities, and prescribe their duties and fix their salaries. Arts. 8235, 8245, and 8248 to 8252, inclusive. The powers of the commissioners include the right to assess and collect charges for the use of all facilities in the District. Art. 8237.

Up to June 30, 1934, the agencies indicated invested the following sums in the Port of Houston:

|  | Channel | | Facilities |
|  | Construction | Maintenance |  |
|---|---|---|---|
| United States Government | $17, 075, 641. 32 | $8, 472, 644. 98 | |
| Navigation District | 3, 836, 064. 04 | 162, 635. 95 | |
| City of Houston | | | $3, 480, 601. 40 |
| Navigation District | | | 8, 667, 772. 89 |

The income from operations, and operation and maintenance expenses, exclusive of interest on bonds and depreciation, of the District for the years 1925 to 1932, inclusive, were as follows:

| Year | Income | | Expenses | |
|  | Operations | Taxes | Facilities | Channel, harbor patrol, inspection boat, ferry |
|---|---|---|---|---|
| 1925 | $92, 353. 97 | $491, 326. 43 | $60, 053. 85 | $1, 546. 43 |
| 1926 | 163, 819. 77 | 545, 085. 62 | 106, 584. 74 | 881. 12 |
| 1927 | 197, 225. 28 | 605, 438. 07 | 152, 244. 11 | 2, 772. 07 |
| 1928 | 242, 807. 03 | 563, 960. 81 | 112, 513. 86 | 2, 112. 67 |
| 1929 | 295, 363. 06 | 561, 664. 92 | 117, 705. 55 | 5, 880. 31 |
| 1930 | 251, 604. 17 | 587, 510. 61 | 170, 985. 74 | 8, 653. 07 |
| 1931 | 389, 773. 54 | 828, 281. 91 | 188, 595. 39 | 7, 988. 24 |
| 1932 | 342, 154. 89 | 842, 154. 82 | 181, 037. 84 | 6, 548. 56 |

The taxes collected were available to pay interest on and retire outstanding bonds and for maintenance, operating, and upkeep charges of the District. Art. 8222.

The cost of the assets of the District as of the close of 1934 was as follows:

| | | | |
|---|---|---|---|
| Ship channel | $3,836,064.04 | Elevator | $2,538,280.89 |
| Wharves | 2,812,534.76 | Other capital improve- | |
| Fireboat | 307,398.16 | ments | 785,930.97 |
| Railroad | 2,223,628.11 | | |

The petitioner was employed by the board of commissioners of the District on a yearly basis, subject to termination by either party on notice of 90 days. His duties consisted of managing the affairs of the District under the title of director of the Port of Houston; acting as secretary of the board of commissioners of the District, as provided in the rules and regulations promulgated by the commissioners; supervising the maintenance and operation of the facilities of the District, including the wharves, docks, grain elevator, bunkering plant, and right of way of the switch railroad which connects the facilities of the port; supervising the purchase and acquisition of dumping grounds tendered to and used by the United States Government in connection with its operations in deepening and maintaining the Houston Ship Channel; supervising the appointment and activities of pilots, the policing of the channel and wharves by District policemen, and boats which clear the channel of debris; supervising the functioning of the public fireboat, the issuance of permits for the construction of private facilities within the harbor lines of the channel, the keeping of all records and minutes of the District, and the operations of all of its employees. He devoted all of his time to such duties, not being employed by any other person, firm, association, or corporation. He took no oath of office upon assuming his duties with the District.

The Revenue Act of 1932 taxes compensation for personal service "of whatever kind and in whatever form paid." Sec. 22 (a). If the petitioners are to escape tax on the salary the husband received from the District, it must be under the principle that the instrumentalities by which states exercise their essential or usual governmental functions are immune from taxation by the Federal Government. *Collector* v. *Day*, 11 Wall. 113. The petitioners contend that the District is a political subdivision of the State of Texas, engaged in the performance of essential and usual functions of sovereignty. The position of the respondent is that the activities of the petitioner's employer are proprietary in character and therefore petitioner's salary is not immune from taxation, even though the Board should

hold that petitioner was an employee of a political subdivision of the State of Texas.

The District was organized under statutes enacted pursuant to article 3, section 52, of the Constitution of Texas, providing for:

(a) The improvement of rivers, creeks, and streams to prevent overflows, and to permit of navigation thereof or irrigation thereof, or in aid of such purposes.

Another provision of the state constitution makes districts created to perform any of such functions "governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law." Art. 16, sec. 59a.

That the District is a political subdivision of the State of Texas is clear. *Smith* v. *Wilson*, 13 Fed. (2d) 1007; appeal dismissed, 273 U. S. 388; *D. G. Wood and Wife*, 29 B. T. A. 919, involving the compensation of an employee of the Hidalgo County Water Control and Improvement District No. 6. It also seems clear that the petitioner, J. Russell Wait, was an employee of the District throughout the taxable year in question.

Although respondent in his answer to the petitions does not admit that petitioner was an employee of a political subdivision of the State of Texas, he does not contend otherwise in his brief. The chief contention upon which respondent relies is stated in his brief as follows:

Compensation received by the petitioner as director of the Port of Houston, Texas, is not exempt but is subject to Federal income tax for the reason that the services for which the compensation was received were not rendered in connection with the exercise of an essential governmental function.

We think that the issue raised is controlled by *Commissioner* v. *Ten Eyck*, 76 Fed. (2d) 515, affirming 29 B. T. A. 1113, and *Montgomery B. Case*, 34 B. T. A. 1229. The *Ten Eyck* case involved the Albany Port District, Albany, New York, and *Montgomery B. Case* involved the Port of New York Authority. In each of these cases it was held that the respective port authority districts were political subdivisions of a state and were performing usual and essential governmental functions, and that the salaries of their officers and employees were not subject to Federal income tax.

We do not think that the facts of the instant case are sufficiently distinguishable from the facts in the two cases cited above to justify a holding here different from what was held in those cases. We therefore hold that during the taxable year in question the petitioner, J. Russell Wait was an employee of a political subdivision of the State of Texas, engaged in the performance of usual and essential

governmental functions, and that the salary of $9,000 paid him was not subject to Federal income tax.

Inasmuch as the entire amounts of the deficiencies which respondent has determined are each due to the addition to the respective incomes of petitioners of one-half of the salary in question,

Reviewed by the Board.

*Decision will be entered for petitioners.*

---

DISNEY, dissenting: I dissent. I can not believe that the idea as to the management of ports involving the principle of essential governmental agency, under the various facts discussed in *Montgomery B. Case*, 34 B. T. A. 1229, following *Commissioner* v. *Ten Eyck*, 76 Fed. (2d) 515, requires that principle to be extended over proprietary functions such as appear in the instant case. It has been said that taxation is a practical matter, and I believe that tenuous theories have been followed far enough in a matter of such practical import and of reciprocal relations between state and nation, without impinging further upon situations involving functions indubitably proprietary in their essential nature, and as a matter of fact involving competition with ordinary business. Assuming, in a situation of national or near-national importance, where state sovereignty has been exercised and state aid rendered because necessary to the project, that comparatively unimportant incidental proprietary functions might be included, there is violation of logic in allowing the covering of competitive and proprietary business enterprise within the mantle of essentially governmental functions. They are, in fact, and under common custom and practice, not such, and can logically be included only upon the ground of necessity and as indispensable incidents in a project of such breadth as to render them inconsequential. In the instant case I fail to see such a situation.

HILL agrees with this dissent.