LILLIAN M. JEFFRIES, ADMINISTRATRIX, ESTATE OF JAMES B. JEFFRIES, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81968. Promulgated April 22, 1938.

*Paul E. Shorb, Esq.*, for the petitioner.
*S. L. Young, Esq.*, for the respondent.

OPINION.

TURNER: The question presented for determination is whether the decedent's salary is exempt from Federal income tax by reason of the constitutional limitation on the powers of the Federal Government to levy taxes on the salaries of the officers of state agencies or instrumentalities which are engaged in the performance of essential governmental functions. The controversy between the parties is whether the South Florida Conservancy District was engaged in the performance of an essential governmental function. The respondent makes no point that the district was not an instrumentality of the State of Florida, nor that the petitioner was not an official of the district.

Petitioner alleges that the State of Florida, in accepting from the United States the grant of swamp and overflowed lands, accepted them in trust and under a duty to drain and reclaim them, with the Federal Government recognizing that in so doing the state would be performing an essential governmental function. We find nothing in the act under which the lands were granted to indicate that they

were given in trust to the state. The grant was outright and effective from the date of the act of Congress by which made, and the only proviso was that the proceeds received by the state from the lands be used exclusively, so far as necessary, for the purpose of reclaiming the lands by means of drains and levees. See *Wright* v. *Roseberry*, 121 U. S. 488. In speaking of the purposes and requirements of the act, the Court there said:

> The object of the grant, as stated in the act, was to enable the several states to which it was made, to construct the necessary levees and drains to reclaim the land; and the act required the proceeds from them, whether from their sale or other disposition, to be used, so far as necessary, exclusively for that purpose. The early reclamation of the lands was of great importance to the states, not only on account of their extraordinary fertility when once reclaimed, but for the reason that until then they were the cause of malarial fevers and diseases in the neighborhood.

In *Leovy* v. *United States*, 177 U. S. 621, 623, the Court said respecting the act:

> * * * This legislation declares a public policy on the part of the government to aid the States in reclaiming swamp and overflowed lands, unfit for cultivation in their natural state, and is a recognition of the right and duty of the respective States, in consideration of such grants, to make and maintain the necessary improvements.

From the foregoing statements of the Supreme Court it appears that the state in accepting the grant assumed the duty of using the proceeds received therefrom by it, so far as necessary, for reclaiming the lands. Whether this could be said to be an acceptance in trust, or whether the state was under any further duty to the Federal Government, we do not deem it necessary to decide.

In furtherance of the object for which the lands had been granted to it, the State of Florida created the district, which, during the taxable year and for several years theretofore, was engaged in attempting to make the swamp and overflowed lands situated within its boundaries habitable and available for settlement by rendering them sanitary and suitable for agricultural purposes. For the use of the district in performing this work the state provided funds by means of charges or assessments imposed by it on lands situated in the district. A drainage district created by a state as a political subdivision thereof for the purpose of draining and reclaiming swamp and overflowed lands by rendering them habitable and cultivatable is an instrumentality of the state created for the purpose of performing prescribed functions of government. *Houck* v. *Little River Drainage District*, 239 U. S. 254.

It is a proper matter for judicial notice that the reclamation of swamp and overflowed lands is a most legitimate exercise of the

police power. See *Leovy* v. *United States, supra,* page 636, where the Supreme Court said:

We think that the trial court might well take judicial notice that the public health is deeply concerned in the reclamation of swamp and overflowed lands. If there is any fact which may be supposed to be known by everybody, and, therefore, by courts, it is that swamps and stagnant waters are the cause of malarial and malignant fevers, and that the police power is never more legitimately exercised than in removing such nuisances. The defendant was not deprived of the defense that the act which he was charged with was performed in order to promote the health of the community, by the fact, if fact it was, that the order under which he acted did not say anything about the subject of health, but simply authorized the erection of the dam, so as to exclude the overflow from the river.

Here the state created an agency of its own for the exercise in a particular area of its police power as related to drainage. The police power, however, is and remains a governmental power and its exercise does not extend to the performance of activities that are nongovernmental and proprietary in nature. *Ohio* v. *Helvering,* 292 U. S. 360. Accordingly we hold that the drainage and reclamation work carried on by the district was the exercise of functions essentially governmental in character and not private or proprietary.

This conclusion, we think, is consistent with recent decisions. In *Brush* v. *Commissioner,* 300 U. S. 352, the Supreme Court, in holding that the acquisition and distribution by the city of New York of a supply of water for its inhabitants was the exercise of an essential governmental function, stated among other reasons that the health and comfort of the people are dependent upon an adequate water supply. If the furnishing of a supply of water needed for health purposes constituted a governmental function, the removal of excess water from a swamp area also necessary for health purposes would appear to constitute a governmental function. In *Hoskins* v. *Commissioner,* 84 Fed. (2d) 627, the court, in holding that the operation of school cafeterias by a public school system was a governmental function, among other reasons relied on the fact that such operation tended to improve the health of the pupils. See *Gregg* v. *United States,* 22 Fed. Supp. 802 (U. S. Dist. Ct., W. Dist. Pa., Feb. 23, 1938), to the same effect. In *Ernest H. Hale,* 33 B. T. A. 504, the conclusion that the maintenance of municipal play grounds was an essential governmental function was based on the duty of the municipality to preserve the public health.

The district also built some roads and bridges in connection with its principal activity of drainage and reclamation. These, being incidental to its principal work, partook of its nature. *Brush* v. *Commissioner, supra.* However, standing alone, they would also be governmental functions. *Commissioner* v. *Harlan,* 80 Fed. (2d) 660,

affirming 30 B. T. A. 804; *Boomer* v. *Glenn*, 21 Fed. Supp. 766.

Respondent, in support of his contention that the district was not engaged in performing governmental functions, relies on our decision in *T. P. Wittschen*, 25 B. T. A. 46, which was followed in *D. G. Wood*, 29 B. T. A. 919. In the *Wittschen* case we held that a utility district organized by the vote of the people, with power to own and operate works for supplying the inhabitants of the district with light, water, power, heat, transportation, telephone service and other means of communication, and the means for the disposal of garbage, sewage, and other refuse matter was not organized as a political subdivision of the State of California primarily for governmental purposes and was not engaged in performing essential governmental functions. Clearly the objects and powers of that district are so varied and different from those of the district involved here that our decision there may not be said to be controlling in the instant case. In the *Wood* case it was held that the water control and improvement district organized under the laws of Texas as a political subdivision thereof and engaged in furnishing water to the arid and semi-arid area comprised in it was not engaged in the performance of an essential governmental function. In *Ashton* v. *Cameron County District*, 298 U. S. 513; petition for rehearing denied, 299 U. S. 619, there was in issue the question of whether a similar improvement district organized under the laws of Texas to furnish water for irrigation and domestic uses was created for the exercise of governmental or mere corporate functions. Relying upon its former decisions with respect to the immunity of states and municipalities from Federal taxation as being applicable, the Supreme Court concluded that the district was created to exercise governmental functions. Our decision in the *Wood* case, therefore, is not in harmony with the conclusion reached by the Court. Nor is it in harmony with the later decision of the Court in *Brush* v. *Commissioner*, *supra*, where the *Ashton* case was considered at length. In view of the foregoing, the decision in the *Wood* case can not be applied here.

More in the nature of a suggestion than a contention, the respondent states on brief that petitioner has failed to show affirmatively the manner and to what extent the imposition of the tax here involved would be a burden on the district in the conduct of its activities. In such cases the officers and employees are the means through which a state agency must necessarily exercise its powers and, as such, are not subject to tax by the Federal Government. *Collector* v. *Day*. 11 Wall. 113; *Brush* v. *Commissioner*, *supra*; *Commissioner* v. *Sherman*, 69 Fed. (2d) 755; and *Commissioner* v. *Harlan*, *supra*. Cf.

*Joseph B. Strauss*, 35 B. T. A. 673. In *Indian Motocycle Co.* v. *United States*, 283 U. S. 570, the Supreme Court said: "Where the principle applies it is not affected by the amount of the particular tax or the extent of the resulting interference, but is absolute." Recently, in *Helvering* v. *Mountain Producers Corporation*, 303 U. S. 376, the Supreme Court overruled its prior decisions in *Gillespie* v. *Oklahoma*, 257 U. S. 501, and *Burnet* v. *Coronado Oil & Gas Co.*, 285 U. S. 393, and held that income derived by private agencies or individuals from state owned lands was subject to Federal income tax, but there is nothing in that decision which in any way indicates that the Court modified or in any way intended to modify or change its position as taken in *Brush* v. *Commissioner*, *supra*, and other cases cited to the effect that the salary of an officer of an instrumentality of a state, which instrumentality is engaged in activities essentially governmental in character, is not subject to Federal income tax.

Reviewed by the Board.

*Decision will be entered for petitioner.*