**UNITED STATES v. JONES.**

**No. 6123 T.Cr.**

United States District Court
S. D. Florida, Tampa Division.

Nov. 25, 1952.

Herbert S. Phillips, U. S. Atty., Tampa, Fla., for plaintiff.

Pat C. Whitaker, Tampa, Fla., for defendant.

BARKER, District Judge.

The prosecution in this case is brought under Section 242, Title 18 U.S.C.A. The information is in two counts.

The first count charges that the defendant is an officer of the State of Florida, as Captain of State Road Department Prison Camp No. 8515 of said State; that as such Captain he had in his custody and under his control as a prisoner the person named in said count, and that the defendant, while acting under color of the laws, statutes and regulations of the State of Florida as such Captain of said State prison camp, did wilfully and knowingly subject and cause to be subjected said named person, an inhabitant of the State of Florida, and a prisoner in said camp, to the deprivation of his rights not to be deprived of liberty without due process of law, secured to him and protected by the 14th Amendment to the Constitution of the United States, towit: the right not to be subjected to assault as illegal summary punishment while in the custody of the State of Florida, or of a person asserting or exercising the authority of and acting under color of the laws of said State;

the right to be tried for an alleged offense by due process of law and if found guilty to be sentenced and punished in accordance with the laws and regulations of the State of Florida; and the right to be immune from brutality, force and violence or other third degree methods and actions used by persons asserting and exercising authority of and acting under color of the laws of the State of Florida in order to extort information concerning alleged offenses or infractions of prison regulations. It is further charged that the defendant, while acting as such Captain, and under color of law as aforesaid, did wilfully and knowingly whip and strike said named prisoner because said prisoner had committed a violation of the laws of the State of Florida, or an infraction of the rules and regulations applicable to said prison camp by having escaped from said prison camp; and to coerce information concerning alleged offenses or infractions of prison regulations, for the willful purpose and with the intent to impose illegal summary punishment upon and to deprive the said named prisoner of his said constitutional rights.

Count two of said information is identical with count one with the exception of the name of the prisoner, and it does not contain any of the allegations concerning any attempt to extort by coercion any information.

■ The allegations of the information are to be most strongly construed against the government. The allegations, and particularly the first count, are not free from ambiguity. It is alleged that (a) the reason for the whipping was because the prisoner had violated the law or regulations by escaping; (b) it is also alleged that the whipping was to coerce information concerning some supposed undesignated offenses or infractions of some unspecified prison regulations by some unidentified persons; and (c) it is also alleged the whipping was because of willful intent to deprive the prisoner of some rights alleged to be secured to him by the 14th Amendment. Both counts are subject to the construction that the whippings were administered for the

purpose and with the intent of disciplining said prisoners for having illegally escaped, and I so construe the allegations of each count.

The defendant filed a motion to dismiss on the grounds, among others, that the information failed to charge the violation of any right secured or protected by the Constitution of the United States or any Federal law, and failed to charge the violation of any Federal law, and that the court was without jurisdiction to try said cause.

The prisoners alleged to have been in the custody and control of the defendant as Captain of said State convict camp and charged to have been assaulted and whipped by the defendant, were in his custody and control only by reason of their conviction of a felony committed against the laws of Florida. This is the only way they could have been prisoners in the custody and control of the defendant as Captain of a State convict camp, because under Florida law, the only persons who can be confined as prisoners in a State convict camp are those who have been convicted and sentenced for the commission of a felony. Sections 775.06, 775.08, 954.45, and 952.07, Florida Statutes Annotated. Therefore, the pivotal question for determination is whether the charge that a State convict Captain, having custody of prisoners who are serving sentences as convicted felons, violates any Federal law if he disciplines such convicts by whipping for having violated the law or a regulation by escaping.

This of necessity requires a determination of whether or not the Federal Constitution or laws, and specifically the involved statute, and the 14th Amendment, secures to such convicts the right not to be assaulted or whipped by the State of Florida or its agents having them legally in their custody.

■■ It is fundamental that there can be no constructive offenses and before a person can be punished, the charge against him must be plainly and unmistakably within the statute. United States v. Lacher, 134 U.S. 624–628, 10 S.Ct. 625–626, 33 L.Ed.

1080. The charge here is against State action. It follows that if the State has the power to provide for the discipline of convicts by whipping, then the allegation that the State has, through its agent, assaulted or whipped a convict on account of his having escaped, charges no violation of the Federal Constitution or Federal laws.

In the early case of In re Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, text 23, 27 L. Ed. 835, the Supreme Court, in construing the involved statute and the power of the National Congress to legislate on the subject-matter, among other things, said: "* * * the legislation which congress is authorized to adopt in this behalf is not general legislation upon the rights of the citizens, but corrective legislation; that is, such as may be necessary and proper for counteracting such laws as the states may adopt or enforce, and which, by the amendment, they are prohibited from making or enforcing, or such acts and proceedings as the states may commit or take, and which, by the amendment, they are prohibited from committing or taking."

■ The power of the States to regulate, administer and control their internal affairs, including their penal institutions, was never surrendered to the Federal Government, but specifically reserved to the States by the 10th Amendment and the Federal Government has no power or discretion over the exercise of such powers so reserved to the States.

Collector [Buffington] v. Day, 11 Wall. 113, 20 L.Ed. 122, text 126: "The general Government and the States, although both exist within the same territorial limits are separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres. The former in its appropriate sphere is supreme; but the States within the limits of their powers, not granted, but in the language of the 10th Amendment, 'reserved', are as independent of the general Government as that Government, within its sphere, is independent of the States. To them the whole charge of interior regulation is committed or left; to them and to the people

all powers not expressly delegated to the National Government are reserved." To the same effect, In re Slaughterhouse Cases, 16 Wall. 36–130, 21 L.Ed. 394–409.

■■ The general government possesses no supervisory discretion or inherent power in respect of the internal affairs of the states. Carter v. Carter Coal Company, 298 U.S. 238, 56 S.Ct. 855, 864, 865, et seq., 80 L.Ed. 1160:

"* * * it is of vital moment that, in order to preserve the fixed balance intended by the Constitution, the powers of the general government be not so extended as to embrace any not within the express terms of the several grants or the implications necessarily to be drawn therefrom. It is no longer open to question that the general government, unlike the states, * * * possesses no inherent power in respect of the internal affairs of the states * * *.

"The determination of the Framers Convention and the ratifying conventions to preserve complete and unimpaired state self-government in all matters not committed to the general government is one of the plainest facts which emerges from the history of their deliberations. And adherence to that determination is incumbent equally upon the federal government and the states. State powers can neither be appropriated on the one hand nor abdicated on the other."

In Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 532, 62 L.Ed. 1101, the Court said: "The power of the states to regulate their purely internal affairs by such laws as seem wise to the local authority is inherent and has never been surrendered to the general government."

And in Siegel v. Ragen, 180 F.2d 785, text 788, the Circuit Court of Appeals, 7th Circuit, in which certiorari was denied by the Supreme Court, 339 U.S. 990, 70 S.Ct. 1015, 94 L.Ed. 1391, said [180 F.2d 788]:

"The Government of the United States is not concerned with, nor has

it power to control or regulate the internal discipline of the penal institutions of its constituent states. All such powers are reserved to the individual states. * * *

"The 14th Amendment does not empower Congress to legislate on matters within the domain of the States' powers * * *. In re Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835."

In the case of Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031–1039, 89 L.Ed. 1495, the court held that the Federal right claimed to have been violated must have been made definite by decision or other rule of law, and further, in construing the involved statute, said: "Thus Congress, in § 20 of the Criminal Code did not undertake to make all torts of state officials federal crimes. It brought within § 20 only specified acts done 'under color' of law and then only those acts which deprived a person of some right secured by the Constitution or laws of the United States."

The conduct and administration of state penal institutions being among the powers reserved exclusively to the states, including the method of punishing or disciplining its convicts, whether whipping or corporal punishment is legal or illegal in a state is purely a matter of state law. Florida has provided elaborate laws for the regulation of its penal institutions. From time immemorial prison officials were vested with the power and authority of imposing corporal punishment upon prisoners as a part of the discipline and restraint. 50 C.J. 344. And chastisement of convicts by corporal punishment can be legally inflicted when done by legislative sanction. 13 C.J. 921 and 18 C.J.S., Convicts, § 11, p. 112. In the case of Westbrook v. State, 18 Am. & Eng. Annotated Cases 298, in the footnote, comprehensive and illuminating authorities are cited and quoted showing that for centuries whipping or corporal punishment has been a recognized method of discipline of convicts. In several of the states, whipping of convicts is permissible under state law at the present time. In the states where whipping is illegal, it is only so by virtue of state law and not by virtue of any Federal law. Public sentiment based upon principles of Christianity and humanity has resulted in the majority of the states discarding and prohibiting the whipping of convicts. A statute of Florida, Section 952.05, F.S.A., specifically provides such prohibition and prescribes the punishment for its violation. As a matter of power, however, the Legislature of Florida could re-establish this practice.

In its brief, the Government concedes the state has the power to provide and enforce discipline and to manage the affairs of its penal institutions, but theorizes the Federal Government is vested with some discretionary or supervisory power of determining whether or not its treatment of convicts is reasonable or unreasonable. No authorities are cited to support this contention. I cannot follow this logic or reasoning. The exclusive power to regulate and administer state penal institutions and prescribe the discipline of state convicts is reserved to the states, and in the exercise of this power it is supreme and independent of the Federal government, and not subject to any control or paternal supervision of the Federal government.

I do not condone in the slightest the infliction of any brutality or illegal treatment of convicts by prison officials having them in custody. The state courts, however, are vested with exclusive plenary and summary power and authority, Howard v. State, 28 Ariz. 433, 237 P. 203, 40 A.L.R. 1275, as well as responsibility to deal with and punish all such violations of state law, and the Federal Government cannot usurp, nor the states abdicate this responsibility.

No right secured or protected by the Federal Constitution or laws appears, and no Federal question being involved, this court is without jurisdiction to try said cause and therefore an order will be taken dismissing the information.