**BROWN v. HELVERING, Commissioner of Internal Revenue.**

No. 6962.

United States Court of Appeals for the District of Columbia.

Argued Feb. 9, 1938.

Decided April 11, 1938.

Chas. M. Bryan, of Memphis, Tenn., and Arthur G. Brode, of Washington, D. C., for petitioner.

James W. Morris, Asst. Atty. Gen., and Morrison Shafroth, Frank M. Thompson, Sewall Key, Norman D. Keller, and W. Croft Jennings, all of Washington, D. C., for respondent.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

GRONER, C. J.

This petition for review involves income taxes assessed against petitioner in the total amount of $8,101.10 for the years 1924 to 1933, inclusive, and penalties in the amount of $673.79 for the years 1924 to 1931, inclusive.

Petitioner was appointed in 1924 the statutory attorney for the collection of delinquent land taxes for the county of Shelby in the state of Tennessee in accordance with the provisions of Code, § 1588, of that state. In Tennessee the county trustee is the county treasurer, and in that capacity he collects land taxes until March 1 of each year, after which they become delinquent.[1] Within 30 days thereafter he is required to turn over the delinquent list to a constable who makes collections until the succeeding January 1.[2] The statute then provides that the constable shall return the uncollected list to the treasurer, who thereupon advertises for two consecutive weeks that suit will be brought unless payment is made.[3] As to those who fail to pay within the two weeks period, the statute provides, section 1588: "After the publication of the aforesaid notice, and between the date of February 1 and March 1, the trustee shall deliver the delinquent lists showing all unpaid land taxes to an attorney chosen by him with the approval of the county judge, or chairman of the county court, and it shall be the duty of the county trustee and the county judge, or chairman, to cause said attorney to prepare and file suits in the chancery or circuit courts for the collection of all delinquent land taxes, and all arrears of taxes due the state, county, and municipality; and, so that delinquent and municipal taxes may be collected at the same time as other taxes, it shall be the duty of the proper municipal officers to furnish the county trustee or his attorney, certified lists of delinquent municipal taxes, unless otherwise provided."

When all this is done and suits are brought, the trustee is released from liability; he has no authority as to any subsequent collection of taxes; and the practice then is for the person desiring to pay a tax to go to the office of the attorney in the

---

[1] Section 1545, Code of 1932.
[2] Sections 1565, 1574, 1582.

[3] Section 1586.

county courthouse, receive from him a statement of the amount due, with interest and penalties, and then pay this amount to the clerk of the court in which the suit is pending. Thereafter, the attorney takes proper action to release the lien and dismiss the suit. The statute, section 1590, provides that upon the filing of suit to enforce the lien an additional penalty of 10 per cent. shall accrue, "which penalty shall be devoted to the expense of prosecuting said suits and shall be allowed to the attorney filing the suits as compensation for his services." Section 1591 requires that the suit be filed in the name of the state for the benefit of the county or the municipality, and authorizes the court to order a sale of the land for cash subject to the taxpayer's equity of redemption. It is then bought in for the state for the amount of the tax lien, unless a larger bid is received; and the proceeds of sale are applied, first, to the payment of the 10 per cent. penalty allowed to the attorney as compensation for prosecuting the suits; second, to the costs; and third, to the state first, county second, and municipality third—the amount to each to be ascertained by decree of the court. Section 1592 provides that if the state becomes the purchaser, the costs and the 10 per cent. attorney's fees and the county and municipal taxes shall not become a charge against the state unless and until the amounts due have been collected by the state or the property redeemed by the owner.

Petitioner has been reappointed annually during the entire period in question. He devotes all his time to the discharge of his duties, has an office in the county courthouse, and has assigned to him two assistants paid by the county out of county funds. Hence, as we have seen, his appointment is statutory, his duties are fixed by law, his compensation is made a lien upon the land as a part of the tax when the suit is filed, and is paid only out of the tax collected.

The question here for decision then is: Was the income received by petitioner through such employment exempt from federal income tax?

The same question under varying circumstances and sets of facts has been before the Supreme Court in a number of recent cases, in some of which a disposition to modify the old rules is apparent. The new point of view—less inflexible than the old—is attributed by the Chief Justice in Helvering v. Mountain Producers Corp., 58 S.Ct. 623, 82 L.Ed. ——, March 7, 1938, at least in part, to the "expanding needs of State and Nation." And in those cases where the transaction is not directly or indirectly in behalf of the state and does not involve the exercise of an essential governmental function, the tendency is to make the test of immunity depend more particularly upon whether or not the "burden" on the State is "real" and "substantial"—as was said in the case of Willcutts v. Bunn.[4] But in those cases where the activity or the agencies adopted to carry it out are of a strictly governmental character, the immunity is still absolute—as was said in Indian Motocycle Co. v. United States, 283 U.S. 570, 575, 51 S.Ct. 601, 602, 75 L.Ed. 1277. If, then, this be correct, it may be stated, we think, with complete certainty that the principle still persists, that the compensation of an officer or employee of a state engaged in the execution of any of the state's sovereign powers is immune from taxation by the United States. The reason given for this is that each sovereign in the protection of its independence must administer its affairs within its own sphere without interference from the other. Precisely this was said in Dobbins v. Commissioners of Erie County, 16 Pet. 435, 10 L. Ed. 1022, and Collector v. Day, 11 Wall. 113, 20 L.Ed. 122, and the rule, as we read the later cases, not only remains unimpaired, but is restated and reaffirmed. Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384; Helvering v. Powers, 293 U.S. 214, 55 S.Ct. 171, 79 L. Ed. 291; Indian Motocycle Co. v. United States, supra; New York ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 81 L.Ed. 306; Brush v. Commissioner, 300 U.S. 352, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428; Helvering v. Therrell et al., 58 S.Ct. 539, 82 L.Ed. ——, Feb. 28, 1938. The rule also is recognized in the Treasury Regulations, which exempt from taxation compensation for services rendered "in connection with the exercise of an essential governmental function." Reg. 77, art. 643.

In the Metcalf & Eddy Case the taxpayers were consulting engineers, and were employed to advise states and subdivisions of states with reference to proposed water supply and sewage disposal systems. The

---

4 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260.

tax was imposed on the compensation received by them for such services. In sustaining the Commissioner, the Supreme Court said they were not officers of the states, because there was no statutory provision for such an office; that they were private citizens engaged in the general practice of a profession the taxation of whose profits, though derived from the state, would not impair the functions of the state. But the opinion is careful to point out that nothing there said was to be taken as impugning the established rule that those agencies through which states directly exercise their sovereign powers are immune from taxation by the United States; and where it appeared—as it did there—that a part of the profit sought to be taxed was derived by one of the engineers as incumbent of offices created by statute, the principle of exemption was upheld. In the Powers Case the tax was sustained because the employment was outside the usual essential governmental functions. In the Rogers Case the taxpayer was general counsel of the Panama Railroad Company, a private corporation in which the government owned the entire capital stock. The state of New York, where he lived, proposed to tax his salary, but the Supreme Court held that the railroad being, for national defense purposes, a necessary instrumentality of government, and the taxpayer being an officer of the corporation, the tax was unlawful. The same rule, in the case of an officer of the state, was applied in Brush v. Commissioner, supra.

And this brings us to consider the two most recent decisions: Helvering v. Therrell et al., 58 S.Ct. 539, 542, 82 L.Ed. ——, Feb. 28, 1938, and Helvering v. Mountain Producers Corp., 58 S.Ct. 623, 82 L.Ed. ——, March 7, 1938. The Therrell Case included by consolidation the three cases of Tunnicliffe, McLoughlin, and Freedman. Therrell and Tunnicliffe were each liquidators appointed by the Comptroller of Florida for insolvent banks. They held no commission, took no oath of office; but were formally appointed by the Comptroller and gave bond. The compensation of each was paid from the assets of the insolvent banks. McLoughlin was a "legal counsel" in the liquidation bureau of the New York Insurance Department. He was assigned to the liquidation work of some insolvent insurance companies, and his compensation was charged against and paid out of the assets of the insolvents. Freedman was an attorney in the Department of Justice of the state of Pennsylvania and received an annual salary of $3,000. He in turn was assigned by the Attorney General, with the assent of the Secretary of Banking, to perform certain legal services in connection with the winding up of insolvent banks, and his salary was paid by the Secretary of Banking out of the funds of the closed banks. It was held in all the cases that the employees were taxable, on the grounds that their compensation was paid from corporate assets, that no one of them was an officer of the state in the strict sense of that term, and that the business about which they were employed was not one utilized by the states in the discharge of their essential governmental duties. But in stating the conclusion Mr. Justice McReynolds again repeated and reaffirmed the rule in the Dobbins Case, 16 Pet. 435, 10 L.Ed. 1022, viz., that: "Among the inferences which derive necessarily from the Constitution are these: No state may tax appropriate means which the United States may employ for exercising their delegated powers; the United States may not tax instrumentalities which a State may employ in the discharge of her essential governmental duties—that is those duties which the framers intended each member of the Union would assume in order adequately to function under the form of government guaranteed by the Constitution."

Applying the rule here, we have a case in which there can be no manner of question that in the collection of taxes the state of Tennessee and her subdivision, the county of Shelby, are exercising an essential governmental activity or that petitioner as an agent of the state and county is performing necessary services in aid thereof, and is performing them at the time and in the manner required by the statutes of Tennessee. The Commissioner, however, insists that since the statute under which the duties are performed imposes the actual burden of payment of the compensation on the landowner by the addition of a penalty to the tax, it should be held that the latter and not the state is the paymaster, and that the imposition of a federal tax on his compensation is, so far as the state is concerned, so indirect and remote as not to impair or embarrass the state in the performance of her functions. But this is also true of all other county officers whose compensation comes from fees or penalties. The Commissioner says further that peti-

tioner is not an officer of the state "in the strict sense of that term," for his employment, statutory though it is, is no broader than in the case of Freedman, employed in Pennsylvania's Department of Justice, or McLoughlin, employed as legal counsel by the Insurance Department of New York. In this view Commissioner says petitioner was an independent contractor. But the answer to this is that petitioner was appointed to an office, permanent in character, necessary in the state's scheme of tax collection, the duties whereof are fixed and definite, and the source of compensation not different from multitudes of other county officers. On the several premises we have outlined, the Commissioner urges that we have a situation which factually is different from Helvering v. Therrell, supra, only in the sense that there the taxpayer was employed in a governmental activity nonessential in its nature and here petitioner is employed in the discharge of an essential governmental duty. But even if we concede that Commissioner's conclusion is based on an accurate analysis of the facts—which, as we have indicated, we think is going much too far—the difference is sufficient, unless we wholly disregard the rule recognized and enforced since 1842.

In reaching this conclusion we are not unmindful that there is, as we have already suggested, a growing contrary view; a view grounded on the principle that under our dual system taxation of an essential agency of government ought to be permissible where it is mutual, nondiscriminatory, and results in no direct burden upon the respective governmental powers. This was the view of Mr. Justice Roberts, expressed in his dissent in the Brush Case, supra. And perhaps some of the language of the Chief Justice in his opinion in Helvering v. Mountain Producers Corp., supra, indicates a trend in that direction. But, without more than this, we are not prepared to push the barrier to such a point.

■ Until the Supreme Court decides definitely that the rule of absolute immunity because of sovereign independence in the exercise of essential governmental duties is no longer applicable, we think we should not be justified in departing from the long established principle.

Reversed.