## COMMISSIONER OF INTERNAL REVENUE v. STILWELL.

### No. 6620.

Circuit Court of Appeals, Seventh Circuit.

Jan. 12, 1939.

EVANS, Circuit Judge, dissenting.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Howard P. Locke, Sp. Assts. to the Atty. Gen., for petitioner.

Herbert Pope and Benjamin M. Price, both of Chicago, Ill., for respondent.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals entered November 20, 1936, involving a deficiency in respondent's income tax for the year 1934 in the amount of $680.80. The facts, as found by the Board, are not in dispute, and may be summarized as follows: Respondent, a resident of the City of Chicago, Illinois, was, during the taxable year in question, a Master-in-Chancery of the Superior Court of Cook County. He was first appointed to that office by that court in December, 1911 for the statutory term of two years, and was reappointed by the court for successive statutory terms of two years each, the last of which commenced in December, 1935. In accordance with state statutes, he took and subscribed an oath of office and furnished bond under each appointment. A Master-in-Chancery is empowered by statute inter alia with authority to take depositions, both in law and equity, to administer oaths, to compel the attendance of witnesses, and in the absence of the judge, to order the issuing of writs of habeas corpus, ne exeat, and injunction, and to allow writs of certiorari to remove causes from the courts of Justices of the Peace into the proper court. The Master also has authority to hear cases referred to him by the court, to make findings and conclusions thereon and report the same to the court. These various duties authorized by statute, were performed by the respondent.

During the year in question, respondent received fees as Master-in-Chancery in the sum of $15,886.02, as compensation for services rendered in connection with such duties. These fees were determined and allowed by the court against the los-ing party as part of the costs in the various matters of litigation. All of the fees received by respondent as Master-in-Chancery during the year in question were paid by the litigants in such cases and no part of the same was paid or chargeable to the state or any municipality or political subdivision thereof.

This compensation was not included by respondent in his income tax return for the year, 1934, on the ground that he was exempt from such tax. The Commissioner of Internal Revenue ruled to the contrary and after allowing certain deductions for rents and other office expenses, determined a deficiency against the respondent in the amount of $680.80. Upon appeal, the Board of Tax Appeals found that respondent, as Master-in-Chancery, was an officer of the State of Illinois engaged in the performance of essential Governmental functions and held in his favor. It is here contended by petitioner that such action by the Board was erroneous.

There is no question but what the respondent was a statutory officer of the state, engaged in essential Governmental functions. This much is conceded by petitioner, or, at any rate, is not disputed, but it is contended that inasmuch as respondent was not paid out of state funds that the implied rule of immunity is inapplicable. This is the sole question here presented. It is argued that inasmuch as the compensation received by respondent was in the form of fees received by him from private parties for duties performed as Master-in-Chancery, no burden was imposed upon the state by the tax and that the normal and orderly process of the state's judicial function was not thereby disturbed; that the burden of the tax, if any there be beyond that borne by respondent himself, passed to private persons.

Perhaps there has been no constitutional question concerning which there has been greater controversy than the extent to which the Federal Government may extend its taxing powers against the instrumentalities and agencies employed by a state, and, conversely the extent to which the State Governments may extend their powers of taxation against instrumentalities and agencies utilized by the Federal Government. The controversy has raged from the time of McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579, decided in 1819. Inasmuch, however, as the petitioner relies principally upon the recent case of Helver-

ing v. Therrell, 303 U.S. 218, 58 S.Ct. 539, 82 L.Ed. 758, decided February 28, 1938, and Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427, decided May 23, 1938, it would serve no useful purpose for us to undertake to discuss or analyze the many opinions of the Supreme and other courts where the question, under a great variety of circumstances, has been discussed and decided.

It is respondent's contention that the case of Collector v. Day, 11 Wall. 113, 20 L.Ed. 122, decided in 1868, is controlling. There it was held that the taxing power of the Federal Government is subject to an implied restriction when applied to state instrumentalities and that the salary of a state officer, a probate judge, was immune from Federal income tax. In discussing the relationship existing between the Federal and State Governments, the court, among other things, on page 125, of 11 Wall. said: "Such being the separate and independent condition of the States in our complex system, as recognized by the Constitution, and the existence of which is so indispensable, that, without them, the general government itself would disappear from the family of nations, it would seem to follow, as a reasonable, if not a necessary consequence, that the means and instrumentalities employed for carrying on the operations of their governments, for preserving their existence, and fulfilling the high and responsible duties assigned to them in the Constitution, should be left free and unimpaired, should not be liable to be crippled, much less defeated by the taxing power of another government, which power acknowledges no limits but the will of the legislative body imposing the tax. And, more especially, those means and instrumentalities which are the creation of their sovereign and reserved rights, one of which is the establishment of the judicial department, and the appointment of officers to administer their laws. Without this power, and the exercise of it, we risk nothing in saying that no one of the States under the form of government guaranteed by the Constitution could long preserve its existence. * * * It is, therefore, one of the sovereign powers vested in the States by their constitutions, which remained unaltered and unimpaired, and in respect to which the State is as independent of the general government as that government is independent of the States."

It will be noted that nothing was said by the court in this case regarding the source from which the tax payer received his income, but we are convinced from the language of the court that such a question at that time would have been regarded as immaterial. The principle established in Collector v. Day, supra, has been cited with approval in many cases including that of Indian Motocycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277, where the court on page 575, 51 S.Ct. on page 603, after reaffirming the lack of authority in the Federal Government to tax the instrumentalities, means and operations whereby the states exert the Governmental powers belonging to them, said: "Where the principle applies it is not affected by the amount of the particular tax or the extent of the resulting interference, but is absolute. [Citing cases.]"

Another case where Collector v. Day, supra, is cited is that of Helvering v. Gerhardt, supra, relied upon by petitioner, which we shall hereinafter discuss. A study of the cases, however, convinces us that the rule as announced in Collector v. Day, supra, has neither been modified nor changed, and is yet the law.

That the precise question here presented, that is, where the taxpayer, though he be an officer of the State Government, receives his compensation from sources other than the State, or the political subdivision of which he is an officer, is immune from Federal taxation, has not been decided by the Supreme Court, is conceded. We are urged, however, to adopt what is claimed to be the more modern theory that, immunity from Federal tax is allowable only where there is a resultant burden upon the state instrumentality, and where, as here, the compensation of the taxpower is payable from a source other than the state itself, there can be no such burden upon the state, and consequently, no immunity.

We shall now consider the recent cases of Helvering v. Therrell, supra, and Helvering v. Gerhardt, supra, relied upon by petitioner in support of its contention. Petitioner, in its brief, with reference to the former of these cases, says: "In the Therrell Case, supra, the Supreme Court held that the compensation paid to a liquidator of state banks, appointed by the State Comptroller, under statutory authority, was not immune from Federal income tax because such compensation 'was paid from corporate assets—not from funds belonging to the State.' It is true that the Court there said that the liquidation of

banks was not the discharge by a state of one of its essential governmental duties, but the decision turned upon the absence of burden upon the state. The burden, if any beyond that falling upon the liquidator himself, fell upon the liquidated corporations, out of whose assets the compensation was paid."

If we correctly understand the opinion of the court in this case, petitioner's conclusion as to what the court held, is erroneous. There the court had before it claims for immunity by four taxpayers, two of which were state liquidators of insolvent banks, and two, who by appointment of the State Government, were serving as attorneys for insurance companies and banks in process of liquidation. The Commissioner of Internal Revenue had denied their claims for immunity and held their compensation subject to the Federal income tax. The court, in disposing of the question, referring to the action of the Commissioner, on page 225, 58 S.Ct. on page 543, said: "He gave proper application to the rule which we must recognize as established. The compensation of the taxpayers was paid from corporate assets —not from funds belonging to the state. No one of them was an officer of the state in the strict sense of that term. The business about which they were employed was not one utilized by the state in the discharge of her essential governmental duties. The corporations in liquidation were private enterprises; their funds were the property of private individuals."

True, the court makes reference to the fact that the taxpayers' compensation "was paid from corporate assets—not from funds belonging to the state," but the case was not decided upon that basis, but upon the proposition "no one of them was an officer of the state in the strict sense of that term. The business about which they were employed was not one utilized by the state in the discharge of her essential governmental duties." That was the rule which the court referred to in the first sentence of the language quoted. If there be any doubt regarding our conclusion in this respect, we think it must be dispelled by what the court said on page 223, 58 S.Ct. on page 542, where the rule is announced: "* * * the United States may not tax instrumentalities which a state may employ in the discharge of her essential governmental duties—that is those duties which the framers intended each member of the Union would assume in order adequately to function under the form of government guaranteed by the Constitution."

Applying the rule thus announced to the instant question, immunity must be sustained. There can be no question—in fact, it is conceded—that a Master-in-Chancery is an integral part of the Judicial system of the State, and as such, engaged in the performance of essential Governmental functions. It is not one of the numerous and rapidly increasing agencies of State Government which has so often been the subject of controversy in connection with tax immunity, but is an instrumentality as old as Government itself, and much older than our present Governments, either Federal or State.

The other and latter case of Helvering v. Gerhardt, supra, on which petitioner even more strongly relies, does not, in our judgment, sustain the petitioner's theory. True, some language is used which upon first reading apparently affords some basis for petitioner's argument, but a careful study of the opinion, with due consideration for the situation which the court had before it, convinces us that the support is not real. There the claimed immunity was by a construction engineer and two assistant managers employed by the Port Authority, a bi-state corporation created by compact between New York and New Jersey, and approved by the Congress of the United States. The Authority was engaged in the operation of certain transportation facilities, the funds for which were furnished largely by the two states. Tolls were charged and profits realized inured to the benefit of the states. Neither the compact nor the related statutes created any office to which the respondents were appointed, nor defined their duties nor required that an oath be taken. The Board of Tax Appeals held that the Authority's employees were engaged in the performance of a public function for the interested states and as such, were exempt from Federal income tax. The opinion of the court is lengthy and an extended analysis of the same would unduly prolong our opinion. It is sufficient, we think, to point out that the court was called upon to determine the highly controverted question as to whether the taxpayers claiming immunity were engaged in an essential Governmental function. This it did contrary to their claim, and thus immunity was denied.

The court at two places in its opinion (pages 416 and 419, 58 S.Ct. pages 973 and 974) dwells upon the steady and constant expansion of Governmental activities unknown as Government functions at the time the Constitution was adopted. It points out the danger to the Federal taxing power if these multiplied new forms of state activities be permitted to escape Federal taxation. Reference is made to cases in which immunity has been allowed and those where it has been refused. With reference to the latter class of cases, the court on page 418, 58 S.Ct. on page 974 said: "In each of these cases it was pointed out that the state function affected was one which could be carried on by private enterprise, and that therefore it was not one without which a state could not continue to exist as a governmental entity. The immunity has been still more narrowly restricted in those cases where some part of the burden of a tax, collected not from a state treasury but from individual taxpayers, is said to be passed on to the state."

It is this last sentence which petitioner especially stresses, but it seems apparent that the additional restriction there referred to has reference only to such state functions as might appropriately be carried on by persons engaged in private enterprises. It is likewise apparent that the matter of burden stressed in this and other cases has been regarded as of importance in determining the question as to whether the taxpayer is engaged in an essential Governmental function, rather than whether the taxpayer engaged in such function is immune. We are unable to find any language in this opinion which appears to us as persuasive, and certainly there is none which is conclusive that a court officer, such as a Master-in-Chancery, should be denied immunity, and we think the source of the official's compensation is immaterial. Certainly there is nothing in the opinion which holds to the contrary and we find nothing which indicates to the contrary. It is worthy of notice that the court referred to and commented upon the case of Collector v. Day, supra, in as many as four instances, (pages 414, 415–417 and 424, 58 S.Ct. pages 972, 973, 974 and 977). It would seem that if the court intended to place any limitation upon the doctrine as promulgated in that case, it had every opportunity to so do. In place of doing so, we think it is a fair inference, even if not expressly stated, that the doctrine was reaffirmed. On page 415, 58 S.Ct. on page 973, it is said: "It is enough for present purposes that the state immunity from the national taxing power, when recognized in Collector v. Day, supra, was narrowly limited to a state judicial officer engaged in the performance of a function which pertained to state governments at the time the Constitution was adopted, without which no state 'could long preserve its existence.'"

Again on page 424, 58 S.Ct. on page 977, it is said: "As was pointed out in Metcalf & Eddy v. Mitchell, supra, [269 U.S. 514] 524, 46 S.Ct. [172], 174 [70 L.Ed. 384] there may be state agencies of such a character and so intimately associated with the performance of an indispensable function of state government that any taxation of it would threaten such interference with the functions of government itself as to be considered beyond the reach of the federal taxing power. If the tax considered in Collector v. Day, supra, upon the salary of an officer engaged in the performance of an indispensable function of the state which cannot be delegated to private individuals, may be regarded as such an instance, that is not the case presented here."

It may not be pertinent, but it is interesting to note, in connection with the question presented, that most county officers in the State of Illinois are paid their salaries from fees collected. They are generally referred to as fee officers. The office of State's Attorney is illustrative. There the salary is fixed by the State law according to the size of the county, but the law requires the State's Attorney to collect fees as provided by law, to make a report of such collections at stated intervals and pay the fees collected into the County Treasurer, where the law requires them to be kept in a special fund out of which the salary of the State's Attorney is payable quarterly. Could there be any logic or reason in depriving one officer engaged in essential governmental functions of immunity because he, under the law, retained fees as collected and as fixed by Statute as his compensation, and allowing it to another officer who likewise collected fees as provided, but who deposits them with some other office, thus creating a fund from which his salary is paid?

And so, we conclude, there is little, if any, room for doubt but what the decision of the Board of Tax Appeals was correct.

Our conclusion is supported by Brown v. Helvering, 68 App.D.C. 332, 97 F.2d 189, a decision of the United States Court of Appeals for the District of Columbia, decided April 11, 1938, where the court, in dealing with a similar question, page 190 said: "The new point of view—less inflexible than the old—is attributed by the Chief Justice in Helvering v. Mountain Producers Corp. [303 U.S. 376,] 58 S.Ct. 623, 82 L.Ed. [907] March 7, 1938, at least in part, to the 'expanding needs of State and Nation.' And in those cases where the transaction is not directly or indirectly in behalf of the state and does not involve the exercise of an essential governmental function, the tendency is to make the test of immunity depend more particularly upon whether or not the 'burden' on the State is 'real' and 'substantial'— as was said in the case of Willcuts v. Bunn [282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260]. But in those cases where the activity or the agencies adopted to carry it out are of a strictly governmental character, the immunity is still absolute."

There the court had the benefit of the Supreme Court's decision in the Therrell Case, but not the Gerhardt Case.

We also attach importance to the fact that the Board of Tax Appeals in Cochrane v. Commissioner, 26 B. T. A. 1167, considered the same situation as is here presented, and in a well reasoned opinion, decided the compensation of a Master-in-Chancery of the Superior Court of Cook County, Illinois, to be immune from the Federal income tax. The Board, in the instant case, again confronted with the same question, reaffirmed its conclusion there reached. Thus twice, the Board of Tax Appeals has expressly decided adversely to petitioner's contention. True, as argued, in the meantime certain regulations have been promulgated by the Treasury Department, evidently with the purpose of making such compensation subject to income tax, but if immunity exists as a Constitutional matter, as we think it does, no regulation could alter the rights of respondent.

The decision of the Board of Tax Appeals is affirmed.

EVANS, Circuit Judge (dissenting).

Convinced that the decisions of the Supreme Court in Helvering v. Therrell, 303 U.S. 218, 58 S.Ct. 539, 82 L.Ed. 758, and Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427, control the disposition of this appeal and adversely to this respondent, I find myself unable to agree with the conclusions voiced in the majority opinion.

The exhaustive discussions of questions somewhat similar to those presented by the instant appeal, appearing in several recent opinions of the Supreme Court, make a lengthy statement of my views unnecessary and inappropriate. Ours is the duty to apply the decisions of the Supreme Court in these income tax cases to the facts of each particular case. To illustrate: Our understanding of the scope and effect of the Sixteenth Amendment is quite inconsequential in view of the holdings in Brushaber v. Union Pacific R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713; Peck & Co. v. Lowe, 247 U.S. 165, 38 S.Ct. 432, 62 L.Ed. 1049; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; Evans v. Gore, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887, 11 A.L.R. 519. These decisions govern. Our plain, if not always simple, duty is to apply them.

Likewise, any previously entertained views as to the scope of the term "essential governmental functions" which we may have had, and the limitations on the Federal taxing power by reason thereof, must yield in the face of specific holdings of the Supreme Court in particular cases.

Does Helvering v. Gerhardt, supra, settle the questions before us? Or perhaps stated differently and better—Does the imposition of a Federal tax upon the income of a master in chancery whose appointment is made and whose compensation is fixed by a state court but paid entirely by the litigants, impair or impede the activities of an essential governmental function?

In Helvering v. Therrell, 303 U.S. 218, 58 S.Ct. 539, 82 L.Ed. 758, the Court said [page 542]:

"* * * Notwithstanding discordant views which have sometimes arisen because of varying emphasis given to one or another of such circumstances, it is now settled doctrine that the inferred exemption from federal taxation does not extend to every instrumentality which a state may see fit to employ. Exemption depends upon the nature of the undertaking; it is cabined by the reason which underlies the inference."

594

The fact which it is urged distinguishes the instant case and lifts it out of the class or group of officers engaged in "essential governmental functions" who,' under the Collector v. Day decision, are immune from Federal income tax is the payment of the taxpayer's income by litigants rather than payment by the state of Illinois. The decision of the Court in Helvering v. Gerhardt, supra, seems to warrant, and in fact necessitates, a test which this and other courts, as well as the Board of Tax Appeals, have not heretofore made in determining whether an officer's salary is exempt from Federal income tax. Our failure to make this test previously was not from lack of desire or want of conviction, but because of our plain duty to apply the decisions of the Supreme Court. The first intimation of a change in the test came in the Therrell Case where the Court said: "The compensation of the taxpayers was paid from corporate assets—not from funds belonging to the state."

A correct interpretation of this language, however, requires the admission that the foregoing quotation was made as a partial test to determine the official status of the taxpayer and the character—the essential or non-essential governmental character of his duties.

In Helvering v. Gerhardt, supra, however, there is laid down a stricter test for one successfully claiming immunity as a state officer engaged in an essential governmental function. A few quotations therefrom are set forth to support this statement:

"When immunity is claimed from a tax laid on private persons, it must clearly appear that the burden upon the state function is actual and substantial, not conjectural."

"The effect of the immunity if allowed would be to relieve respondents of their duty of financial support to the national government, in order to secure to the state a theoretical advantage so speculative in its character and measurement as to be unsubstantial. A tax immunity devised for protection of the states as governmental entities cannot be pressed so far."

"The basis upon which constitutional tax immunity of a state has been supported is the protection which it affords to the continued existence of the state. To attain that end it is not ordinarily necessary to confer on the state a competitive advantage over private persons in carrying on the operations of its government. There is no such necessity here, and the resulting impairment of the federal power to tax argues against the advantage. The state and national governments must coexist. Each must be supported by taxation of those who are citizens of both. The mere fact that the economic burden of such taxes may be passed on to a state government and thus increase to some extent, here wholly conjectural, the expense of its operation, infringes no constitutional immunity. Such burdens are but normal incidents of the organization within the same territory of two governments, each possessed of the taxing power."

"* * * The immunity has been still more narrowly restricted in those cases where some part of the burden of a tax, collected not from a state treasury but from individual taxpayers, is said to be passed on to the state. In these cases the function has been either held or assumed to be of such a character that its performance by the state is immune from direct federal interference; yet the individuals who personally derived profit or compensation from their employment in carrying out the function were deemed to be subject to federal income tax."

"They [judicial pronouncements] * * * definitely establish, two guiding principles of limitation for holding the tax immunity of state instrumentalities to its proper function. The one, dependent upon the nature of the function being performed by the state or in its behalf, excludes from the immunity activities thought not to be essential to the preservation of state governments even though the tax be collected from the state treasury. * * * The other principle, exemplified by those cases where the tax laid upon individuals affects the state only as the burden is passed on to it by the taxpayer, forbids recognition of the immunity when the burden on the state is so speculative and uncertain that if allowed it would restrict the federal taxing power without affording any corresponding tangible protection to the state government; even though the function be thought important enough to demand immunity from a tax upon the state itself, it is not necessarily protected from a tax which well may be substantially or entirely absorbed by private persons. Metcalf & Eddy v. Mitchell, supra; Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260."

The conclusion which I draw from these excerpts is that recognition of immunity will be denied, when the interference with the state governmental functions, through the imposition of Federal income tax, is so uncertain as to be conjectural, theoretical or speculative.

In the final analysis the objection to the levy of a Federal income tax on the compensation of a state official engaged in an essential governmental function is that it interferes with the state's activities in an essential function. If so, then it follows if there arises no burden—no objection to the activities of the state by reason of the levy of such tax—the reason for the immunity fails. For there is no recognition of such immunity appearing in the Sixteenth Amendment nor in the Federal statute which definitely includes *all* incomes within its scope.

The origin of the immunity must be traced to judicial pronouncement, to the decision in Collector v. Day, supra. That the immunity has been narrowed by the various decisions referred to in the Gerhardt Case must be admitted.

As the decisions of today stand, the real test is, as it should be, the effect of the tax on the exercise of the state's essential governmental activities. If it is a burden and it results in an interference with these activities, then, under the existing decisions, the tax is unconstitutional.

Dealing with actualities and not with theories, with a very practical matter, to-wit, taxation, I am unable to see how a tax on the compensation of a special master, whose fees are paid by the litigant, interferes with that official's or the court's activities. It does not even appear that the compensation fixed by the court did not include an allowance for the payment of these taxes. Doubtless the court in making its allowances as compensation to the master, took into consideration his expenses such as office rent, supplies, telephone, etc. And it is also possible, in fact probable, that the sum which the master would be required to pay as income tax, was considered when the court fixed the compensation of his special master. He should, at least, have taken it into consideration.

While it must be admitted that the exact question here presented was not decided by the Gerhardt Case, another Court of Appeals has held that the Gerhardt Case necessitated its holding that the source of

the compensation of the state officer is controlling. Saxe v. Shea, 2 Cir., 98 F. 2d 83.