## POPE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9476.

Circuit Court of Appeals, Sixth Circuit.

Dec. 6, 1943.

Whitworth Stokes, of Nashville, Tenn., for petitioner.

James P. Garland, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, J. Louis Monarch, and Helen Goodner, all of Washington, D. C., on the brief), for respondent.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

On March 4, 1937, the General Assembly of the State of Tennessee passed a Public Act, which was approved by the Governor on March 5, 1937, being Ch. 112 of the Public Acts of 1937, providing for and directing an investigation of the different State Departments, Divisions, Sub-Divisions, Institutions, Offices and Officers, Employees and Agents, Contracts, Purchases and Sales of the State of Tennessee, the collection of taxes, the receipts and the expenditures thereof, and the acts of any-one who occupied or formerly occupied any position with the State, or where the State was in any way affected; and, to make effective this investigation, the Act authorized and empowered the Governor to appoint a lawyer who was to have control, supervision and direction of said investigation, and who was to be of good character and licensed by the State of Tennessee, having a wide experience in the practice of law and in governmental affairs, and who was reasonably well-acquainted with the matters to be investigated. The Act set out the manner in which the investigation should be conducted, giving to the investigator authority to appoint assistants and aides. It was also provided that the lawyer take an oath, the form of which was prescribed, and he was authorized to issue subpoenas for witnesses and to administer oaths, and to compel the attendance of witnesses; and witnesses swearing falsely were guilty of perjury or subornation of perjury. The lawyer was also given authority to issue attachments for witnesses and to make appointments of Sergeant-at-Arms. The Act provided that compensation should be paid to witnesses for their attendance.

It was also made the duty of the investigator to report discovered violations of law to the Prosecuting Attorneys of the State and to aid and assist them in the trial of these cases. An appropriation was made in the Act of $50,000 to be used for the cost of the investigation, payments to be made by vouchers approved by the investigator and the Governor of the State.

It was the duty of the investigator to collect all delinquent taxes, and any other amounts found to be due the State resulting from the investigation. He was also authorized to bring suits in the name of the State to collect discovered delinquencies and to take charge of suits then pending in the courts for the collection of any and all taxes due the State, except property taxes, and was given the power to dismiss any suits pending upon the approval of the Governor.

The Governor was authorized to appoint the investigator and determine his compensation by a written contract, which compensation could be either certain or contingent. The tenure of the investigator expired at the end of two years by operation of law. There were a number of other provisions in the Act not important here.

The Governor of Tennessee on March 13, 1937, appointed petitioner to conduct the investigations and on March 20, 1937, petitioner executed the oath required under the Act. The Governor and the petitioner entered into two written contracts, each dated June 18, 1937. In one it was agreed that petitioner was to be paid $10,000 retainer for the purpose of initiating and conducting the investigations authorized by the Act, other compensation, if any, to be determined subsequently. In the other, petitioner was employed as special investigator and lawyer to represent the State in the collection of all delinquent taxes excluding property taxes. Petitioner's compensation for this service was contingent, providing for a percentage of the amounts collected ranging from ten to forty percent depending on factors of no importance to the present issue.

Petitioner opened an office and employed the necessary assistants, as provided under the Act. He fully discharged all duties imposed on him. The total cost of the investigations was approximately $22,500, $10,000 of which was the retainer paid petitioner and was his total compensation for that branch of the work. Approximately five thousand items of tax delinquencies were prosecuted to final settlement by petitioner out of which the State realized $156,000 and pursuant to the terms of petitioner's contract, he was paid for these services $34,057.70. Out of this sum he paid the expenses incident to his office and the salaries and fees of assistants. During

the calendar year 1937, petitioner received net from the State of Tennessee for his services $13,431.81 and for the year 1938, $10,930.94. Petitioner reported neither of these sums in his income tax return for the years in question on the ground that they were received by him as compensation for personal services as an officer or employee of the State of Tennessee and exempt from tax under the Public Salary Tax Act of 1939, C. 59, 53 Stat. 574-577, 26 U.S.C.A. Internal Revenue Acts, p. 1163, 26 U.S.C.A. Int.Rev.Code, § 22 and § 22 note. The Commissioner included these sums in petitioner's gross income and on appeal was sustained by the United States Tax Court.

During the period here in question, petitioner maintained a separate and private law office, and completed unfinished cases, but took no new ones until after his contract with the State expired. During the taxable year 1937, petitioner received from private practice $5,600.00 and for the calendar year 1938 he received $5,622.00.

The question we have here for decision is whether petitioner was an officer or employee of the State of Tennessee as the term "officer or employee of a State" is used in the Public Salary Tax Act of 1939, the exact language of which is found in the margin.[1]

With the passing of intergovernmental tax immunity, from which was derived the tax exemption of state officers and employees, the Congress passed the Public Salary Tax Act of 1939. By the enactment of Sections 201, 202 and 203, of this Act, it was intended to relieve from retroactive assessment that class of public officials and employees who had been included within the taxing statutes by the decisions of the Supreme Court in Helvering v. Therrell, 303 U.S. 218, 58 S.Ct. 539, 82 L.Ed. 758; Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427, and Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466. (Senate Finance Committee Report 112, 76th Cong. 1st Sess.) (Conference Report No. 390, 76th Cong. 1st Sess.) The pronouncements of the Supreme Court in Metcalf & Eddy v. Mitchell, Adm'x, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384, were in no way impaired by the act. In the Mitchell case, the Supreme Court decided that a consulting engineer engaged as such by a state or its local subdivision for work not permanent or continuous in character on public water supply and sewage disposal projects whose duties were described by contract and who took no oath of office and was free to accept other employment, was neither an officer nor employee of a state or local government but was an independent contractor.

The words "officer or employee" used in the present statute are to be applied in their technical sense. They were intended to describe the conventional relationship of state or local government and officials

[1] Section 1. Section 22(a) of the Internal Revenue Code (relating to the definition of "gross income") is amended by inserting after the words "compensation for personal service" the following: "(including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing)". U.S.C.A., Int.Rev.Code, Title 26, Sec. 22.

"Sec. 201. Any amount of income tax (including interest, additions to tax, and additional amounts) for any taxable year beginning prior to January 1, 1938, to the extent attributable to compensation for personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing—

"(a) shall not be assessed, and no proceeding in court for the collection thereof shall be begun or prosecuted (unless pursuant to an assessment made prior to January 1, 1939)."

"Sec. 202. In the case of any taxable year beginning after December 31, 1937, and before January 1, 1939, compensation for personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing, shall not be included in the gross income of any individual under Title I of the Revenue Act of 1938, and shall be exempt from taxation under such title, if such individual either—

"(a) did not include in his return for a taxable year beginning after December 31, 1936, and before January 1, 1938, any amount as compensation for personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing; or

"(b) did include any such amount in such return, but is entitled under section 201 of this Act to have the tax attributable thereto credited or refunded." Act of April 12, 1939, ch. 59, 53 Stat. 574-577.

or employees. Common use regulates the meaning of words in their broad application, but their precise signification is sometimes difficult when applied to complex relationships. The rule established in Metcalf & Eddy v. Mitchell, supra, has been applied in many situations in which the courts have held that compensation received in the service of a state or its political subdivision, was subject to federal income tax on the ground that the person receiving it was an independent contractor. See footnote.[2] In many other situations, the courts have applied the definition of an officer or employee enunciated in the Metcalf case as exempting compensation received in the service of a state or its political subdivision from federal income tax on the ground that the person receiving it was an officer or employee. See footnote.[3] These variant cases are set in their inexplicable web of facts and it would serve no useful purpose to dissect them for their probable bearing on the issue here.

■ In the broadest sense, an office is the right to exercise public employment and to take fees or emoluments thereunto belonging. It may be said that every one who is appointed to discharge a public duty and who receives compensation in whatever shape—whether from the state or otherwise—is a public officer. The substance of the powers exercised and the nature of the duties imposed make the office and not the extent of the authority. A person may be a public officer although his duties are confined to narrow limits and his period of tenure brief if his duties are those to which a portion of the time being. Giving the word "office" the sovereignty of the state attaches for its technical qualities, five elements would seem indispensible in order to make a public office of a civil nature. (1) It must be created by the Constitution or the Legislature, or by a municipality or other body with authority conferred by the Legislature. (2) There must be a delegation of a portion of the sovereign powers of government to be exercised for the benefit of the public. (3) The powers conferred and the duties to be discharged must be defined either directly or indirectly by the Legislature or through legislative authority. (4) The duties must be performed independently and without control of a superior power other than the law. (5) The office must have some permanency and continuity and the officer must take an official oath.

■ In our opinion, the undisputed facts in the case at bar show that all of the requisite elements are present to make the petitioner an officer; the legislative act creating the office; the clothing of the incumbent with part of the sovereignty of the state; the defining of the powers and duties by the Legislature; their independent discharge; the continuity of office, and the giving of the oath of office.

The case at bar is to be differentiated from those precedents where one possessing professional skill is employed by the Government or a subdivision thereof or their agencies, to conduct specific cases or make specific investigations intermittently or occasionally, and which leave the person thus employed to devote a part of his time to the practice of his profession. In this group, the principle of independent contractor is controlling.

The case of Pease v. Commissioner, 6 Cir., 83 F.2d 122, is outside of the case in hand. There a practicing civil engineer employed by eight villages and one city for brief periods from year to year or for the duration of particular work to supervise construction, improvement and repair of streets, bridges, etc., was held to be an independent contractor. There was absent

[2] Commissioner of Internal Revenue v. Modjeski, 2 Cir., 75 F.2d 468, 469; Coates v. United States, 2 Cir., 111 F.2d 609; Saxe v. Shea, 2 Cir., 98 F.2d 83; Ewart v. Commissioner of Internal Revenue, 3 Cir., 98 F.2d 649; Watson v. Commissioner of Internal Revenue, 3 Cir., 81 F.2d 626; Register v. Commissioner of Internal Revenue, 5 Cir., 69 F.2d 607, 93 A.L.R. 186; Cochran v. Commissioner of Internal Revenue, 5 Cir., 135 F.2d 45; Campbell v. Commissioner of Internal Revenue, 7 Cir., 87 F.2d 128; Haight v. Commissioner of Internal Revenue, 7 Cir., 52 F.2d 779; La Rochelle v. Commissioner of Internal Revenue, 7 Cir., 115 F.2d 878; Lohman et al. v. Commissioner of Internal Revenue, 8 Cir., 133 F.2d 977; Pickett v. United States, 8 Cir., 100 F.2d 909; Burnet v. McDonough, 8 Cir., 46 F.2d 944; Morrissey v. Commissioner, 9 Cir., 103 F.2d 234.

[3] Helvering v. Curren, 2 Cir., 90 F.2d 621; Burnet v. Livezey, 4 Cir., 48 F.2d 159; Blair v. Mathews, 5 Cir., 29 F.2d 892; United States v. Butler, 5 Cir., 49 F.2d 52; Commissioner v. Stilwell, 7 Cir., 101 F.2d 588; Commissioner v. Harlan, 9 Cir., 80 F.2d 660; Brown v. Helvering, 68 App.D.C. 332, 97 F.2d 189.

the indicia of official position, such as tenure, emoluments and duties fixed by law.

In our opinion, the petitioner was an officer of the State of Tennessee within the meaning of Section 201 of the Public Salary Tax Act and the Tax Court was in error in including in his gross income the sums he received from the State of Tennessee.

Prior to 1933, petitioner owned an apartment building in Nashville, Tennessee. In that year he exchanged the apartment building for a farm, the latter having on it a mortgage lien, which petitioner did not assume. As a part of the consideration for the exchange, petitioner executed to the transferor of the farm, two notes, one for $1,500 and the other for $225. Subsequently the transferor of the farm orally agreed to cancel the foregoing notes if petitioner would save the transferor harmless from any deficiency judgment which might occur from a foreclosure of the mortgage indebtedness on the farm. In 1935, the mortgage on the farm was foreclosed and sold to satisfy the lien indebtedness which was discharged in full. In 1938, the administrator of the transferor of the farm, who in the meantime had died, demanded of petitioner payment of the two notes with interest. The controversy was settled by petitioner paying the face of the notes. In his income tax return for the calendar year 1938, petitioner deducted from gross income as a loss, the sum he had paid the administrator, which sum was disallowed by the Commissioner, which disallowance was sustained by the Tax Court.

It is too well established to need citation of authorities that the burden of proving losses is upon the taxpayer. In order to be allowable, the taxpayer must show that the loss was incurred in a closed transaction during the taxable year. The notes in question were a part of the consideration petitioner paid for the farm and any loss by reason of the exchange of the property would seem to have occurred within the year in which the land was sold under the foreclosure decree.

There is no evidence in the record as to how petitioner treated loss or gain from the sale of the farm in 1935, which would be material in determining the present question. It may be that the facts would show that the loss which petitioner claims was not deductible at all from ordinary income, 1938 Act, Sec. 117(b), 26 U.S.C.A. Internal Revenue Code, § 117(b). In our opinion, petitioner has failed to carry the burden of proof that the alleged loss was an allowable deduction within the statute.

The decision of the Tax Court is affirmed insofar as it disallowed the loss of $1,725 and is reversed insofar as it included in petitioner's gross income the sums received by him from the State of Tennessee. The cause is remanded for further proceedings consistent with this opinion.